## THE STATE v. FRANK L. CAUDLE, Appellant.

### Division Two, May 19, 1903.

1. **Change of Venue.** An application for change of venue must show diligence. If it is founded on the prejudice of the judge, it should state when the defendant discovered the alleged bias of the judge; and if it is made without such statement after the panel is made up and both sides have submitted their challenges, it should be overruled.

2. **Impeachment:** COLLATERAL MATTERS: UTTERING FORGED INSTRUMENTS. A witness can not be cross-examined upon an irrelevant and collateral issue for the sole purpose of impeachment. In a prosecution of defendant for uttering a forged note on a bank, knowing it to be forged, it is not proper to ask the cashier, for the purpose of showing that he was willing to accept it after knowing its character and thereby impeaching him, if he did not send a certain friend to defendant to ask him to fix up a note that would make the bank safe, and authorizing him to say that if he did that the bank would not carry the prosecution any further, since the proposal did not amount to a compounding of a felony.

·Appeal from Wright Circuit Court.—*Hon. Argus Cox,*
Judge.

AFFIRMED.

*Farnsworth & Burkhead* for appellant.

(1)  The indictment shows that it was returned
into court A. D. 189—.  (2)  The trial court erred
in excluding testimony of witness Newton as to his
conversation with L. D. Marr.  Marr was cashier of
the bank, the chief prosecuting witness, the one spe-
cially relied on by the State for defendant's convic-
tion, and the evidence offered was clearly competent
for impeachment purposes.  ''Although the conduct
of the witness as to matters having no connection with
the case is generally irrelevant, it is allowable to ask
the witness on cross-examination not only concerning
his contradictory statements, but concerning his ac-
tions if they have been inconsistent with his state-
ments on the witness stand.''  2 Jones on Ev., sec.
848.  Defendant sought to lay the foundation for
the above evidence by inquiring of Marr, when on the
stand, whether or not he had made the statements men-
tioned above to Newton.  The court refused to allow
defendant to lay the foundation for impeaching Marr,
and also committed error at that point in the case.
(3)  Instruction 2 for the State is erroneous in that it
states to the jury that they should convict if they
found that defendant did ''pass and utter the same,
to one T. E. Gaskell as a true and genuine note with
intent to cheat and defraud said T. E. Gaskell,'' etc.
The note introduced in evidence is by its terms and
on its face payable to the order of the Bank of Marsh-
field.  There is no indorsement of the note to Gaskell
by the bank.  It is true that Mr. Marr testifies that
''when the note was acceptable at the bank the pro-
ceeds of the loan were to be placed to Tom Gaskell's
credit on account of which defendant had been draw-

ing checks." This shows that defendant really passed the note to the bank and not to Gaskell, that the bank was at the trial the holder, and that the uttering and passing was done to it and not to Gaskell. This being true, the evidence failed to meet the requirements of the instruction that there was a failure of proof on the part of the State as to the part of the indictment which charged the uttering and passing to Gaskell.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) The defendant does not specifically complain, in his motion for a new trial, of the action of the court in admitting or excluding any particular evidence. The only reference in said motion to the action of the court in admitting or rejecting testimony is this: "Because the court erred in admitting incompetent, irrelevant and immaterial testimony. Because the court erred in excluding competent, relevant and material testimony." Such assignments are of such general character that the court is unable to determine what particular evidence is meant, and in such cases the court will not examine the record to determine whether the court erred in the admission or exclusion of the testimony. If the defendant had any just cause of complaint along this line, he should have specifically advised the trial court of this complaint by a direct reference to the matter. State v. Brown, 168 Mo. 474; State v. David, 159 Mo. 534. (2) The theory of the defendant seemed to be that Gaskell had committed the crime under investigation, and he asked numerous questions pertaining to the whereabouts of Gaskell and whether he had not fled the country. Gaskell was not a witness in the case. And no declaration of his was introduced, or was admissible. Even though Gaskell had admitted that he committed the forgery,

such statements would have been flagrant hearsay and wholly inadmissible. State v. Duncan, 116 Mo. 311; State v. Evans, 55 Mo. 460. (3) After the panel of jurors had been sworn and examined on their voir dire by the State and defendant, and after both the State and defendant had made their challenges, the defendant offered to file an affidavit for a change of venue, based on the alleged bias of the trial judge. The judge refused to permit said affidavit to be filed and the defendant now contends that in doing this error was committed. In the first place, the application was not timely. Besides, it was a matter of exception, and no exception was taken.

GANTT, P. J.—The defendant was indicted at the March term, 1899, of the circuit court of Wright county for forgery.

The indictment contains three counts. The first charges the felonious and false making of a promissory note for $600 purporting to be signed by F. L. Caudle, A. M. Caudle and R. F. Jarrett; the second count charges him with having sold and delivered said falsely made and forged note to T. E. Gaskell; and the third count charges him with passing and uttering as true the said 'forged note to the said Gaskell with intent to defraud.

On his trial he was acquitted on the first and second counts, and found guilty on the third count.

The record proper since its amendment is without error. The indictment is well enough and the arraignment and impaneling of the jury and the return of the verdict and sentence of the court were without objection.

I. There was no error in denying the motion for a change of venue. Outside of the fact that it was not offered for filing until after all the jurors had been examined on their *voir dire* and a panel selected from which to obtain twelve jurymen, and after the State

had made its challenges and the defendant had completed his challenges, it nowhere discloses any diligence. It does not appear when the defendant discovered the alleged bias of the judge. The courts are not to be trifled with after this manner; but no exception was saved, and the point is untenable.

II.   The facts in the record are substantially the following: The defendant was a young man ambitious to deal in buying and selling stock.   The Bank of Mansfield opened an account with him after this manner:

"Tom Gaskell by F. L. Caudle."

From time to time defendant would purchase stock on credit, and sometime in July, 1898, he gave a check on the Bank of Mansfield for $194.   This check was honored, and defendant came to see the bank about it, inquiring if it had been paid.

He then applied to the bank for a loan of $600 to satisfy his overdrafts and to protect Gaskell.   The negotiations resulted in an agreement between him and the cashier, Mr. Marr, by which the bank was to loan him $600, and he would secure it by a chattel mortgage, and personal sureties, his father, A. M. Caudle, and his brother-in-law, Mr. Jarrett.   All parties agree that defendant executed his note for $600 as set out in the indictment, and a chattel mortgage on certain horses described therein; and the cashier, and Mr. Nichols, the notary, testify that defendant then took the note to get his father and brother-in-law to sign it.   Defendant denies that he took the note and insists he left it in the bank.   The agreement at the time according to the cashier and Nichols was that the proceeds of the $600 loan should be placed to the credit of Gaskell Brothers.

The evidence for the State then strongly tends to show that defendant took the note, and a day or two afterwards gave it to Gaskell with the names of A. M. Caudle and Jarrett on it as sureties.   The forgery

·charged and established was of these two names. Both A. M. Caudle and Jarrett testified they never signed the note. There was evidence that defendant admitted to the cashier that neither of them signed it, and more- ·over that he never had the property described in the mortgage, and begged for leniency. The evidence tended to show that the names of A. M. Caudle and Jarrett were not in the handwriting of defendant, but that these names were on the note when he delivered it to Gaskell, who indorsed it as guarantor to the bank, and the proceeds were placed to the credit of Gaskell Bros. The jury found defendant not guilty of the forgery, but guilty of uttering and passing it, knowing the names of these sureties had been forged thereon. The evidence if credited, as it was by the jury, was sufficient to sustain the conviction on the third count.

III. The instructions asked by defendant were properly refused, either because there was no founda- tion in the evidence to support them, or because the court of its own motion had already fully instructed on the points involved. Those for the State are not open to any fair criticism.

IV. The principal objection to the exclusion of evidence is found in the refusal of the court to permit witness L. D. Marr to answer the following question:

"Q. I will ask you to state to the jury whether or not you used this language in substance (to W. N. Newton): 'Can't you go down and get Caudle to fix up a note for $600 to make us safe; we will give him all the time he could reasonably ask; if you will get him to do that we will not carry this prosecution any further so far as we are concerned, but can not say as for the State, but I am satisfied the State will be gov- erned by our wishes.' "

To this question the State's counsel objected and the court sustained the objection and defendant ex- ·cepted.

The purpose of this question, we presume, was to lay a foundation to impeach Marr, by showing that he was willing to accept payment of the note from defendant. It will be observed that the proposal, if true, did not amount to a compounding of the felony. It was an attempt to recall the witness and cross-examine him upon an irrelevant and collateral issue for the sole purpose of impeachment and this is not permissible. [State v. Rogers, 108 Mo. 202; Wharton Crim. Ev. (9 Ed.), sec. 484; McFadin v. Catron, 120 Mo. 264.]

V. There was no error in denying a new trial on the ground of newly-discovered evidence and, indeed, it is not urged in this court.

The foregoing are the grounds upon which a reversal is sought and none of them are sufficient, in our opinion.

The judgment is affirmed. *Burgess* and *Fox, JJ.,* concur.