# THE STATE v. LEHMAN, Appellant.

**Division Two, June 14, 1904.**

1. **CHANGE OF VENUE: Timely Application.** An application for a change of venue on account of the prejudice of the inhabitants, if made after the trial of the cause has begun and after the jurors are being examined as to their qualifications to sit in the trial of the cause, no previous notice having been given, should be denied, as not having been timely made.

2. **————: Practice: Transfer of Cause to Another Division.** Where a cause is transferred from one division of a court to another, both having the same clerk, it is not necessary that the division to which the cause is sent have a certified transcript of the prior proceedings in the other.

3. **SPECIAL JURY: Statute Constitutional.** The statute providing for special juries is constitutional.

4. **BRIBERY: Members of Assembly: Jointly Indicted.** Sixteen members of the House of Delegates, all being members of the same department of the city government, the duties resting upon each being identical, may be jointly indicted in one count for having jointly made a corrupt bargain and agreement, through one of their number, with a third party, to vote for a measure pending before them in their official capacity. It is not necessary that the State charge them separately with making such an agreement. The essence of the offense, under the statute, is making the corrupt agreement; and having made it, it is immaterial whether they voted or not, or whether the measure was adopted or defeated.

5. **————: ————: ————: Individual Agreement.** While it may be said that each of the sixteen members of the House charged with the offense, in contemplation of law, made the corrupt agreement for himself; yet such distinct agreement, so contemplated, results from the joint act of all the sixteen defendants in making the joint corrupt agreement, the agreement being one transaction, and the performance of the same function as a result thereof resting alike upon all. If the charge is that they acted jointly in making the corrupt agreement, no prejudice results to their substantial rights by jointly charging them in the same indictment, for that charge simply means that each of them made it.

State v. Lehman.

6. ———: **Agreement: Joint Votes: Separate Indictment.** The offense of bribery, under the statute, is complete when a corrupt agreement is made by members' of a legislative body to vote, for a money consideration, in a certain way. Sixteen members of such body can not give their joint votes for a pending bill, for each one must give his separate vote. But the sixteen may jointly agree to vote in a certain way, and the essence of the offense being the corrupt agreement, they may be jointly indicted for making that agreement. Whether they do or do not so vote does not affect the crime of having made the corrupt bargain. The bribery is complete when the corrupt agreement is made.

7. **PLEADING: Rules Modified by Statute.** Our statute, providing in substance that no indictment or information shall be deemed invalid for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant, upon the merits, contemplates, to some extent, a relaxation of the strict rules applicable to pleading in criminal cases.

8. **BRIBERY: Proof That All Indictees Were Parties to Agreement.** It is not necessary, in order to prove defendant guilty of being a party to a corrupt agreement entered into by sixteen members of a legislative body, to also prove that each and every of the sixteen members jointly indicted participated in the agreement. It is only necessary to prove that the corrupt agreement was made and that defendant was a party to it.

9. ———: **Corrupt Agreement: Proof: Conspiracy.** Where sixteen members of a legislative body are jointly indicted for making a corrupt agreement to vote in a certain way on a measure pending before them, it is not necessary to show that there was a conspiracy between one of them who testifies for the State and the others. The declarations of all the parties present at the time the agreement was being discussed is competent, and any statement by one of the parties, in the presence of the other, concerning the agreement, is competent.

10. ———: **Agreement to Vote for Bill: Validity of Ordinance.** In the trial of a defendant charged with having made an agreement, and with having accepted a promise, to vote for a bill pending before a legislative body of which he was a member, the legality or illegality of the proposed measure is immaterial. It is not necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that could be enforced. If the proposed measure is one that the legislative body has the right to legislate upon, he can make a corrupt bargain in reference to it.

State v. Lehman.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*C. H. Krum* and *T. J. Rowe* for appellant.

(1) The court erred in refusing to permit defendant to offer evidence on his application for a change of venue and in denying said application. R. S. 1899, secs. 2576, 2577, 2578 and 2579; State v. Boone, 70 Mo. 649. (2) The indictment is double, because it joins in one count nineteen separate and distinct offenses. If it is not double, it states no offense, because there is no such offense as joint bribery based upon a combination of officers to sell their votes. R. S. 1899, secs. 2085, 4158, 4159; U. S. v. Kazinski, Fed. Cas. No. 15508; State v. Hall, 97 N. C. 474; McGhee v. State, 58 Ala. 360; Commonwealth v. Ziert, 5 Lancaster Law Review 138; State v. Rambo, 95 Mo. 462; Shannon v. People, 5 Mich. 98; Commonwealth v. Miller, 2 Parson's Eq. Cases 480; State v. Roulston, 35 Tenn. 107; State v. Wainwright, 29 S. W. 981; Logan v. United States, 125 Fed. 293; State v. Bridges, 24 Mo. 355; 10 Ency. Pl. and Pr. 532; People v. O'Neal, 109 N. Y. 251; People v. Haehne, 103 N. Y. 182; People v. Sharp, 107 N. Y. 427; State v. Ames, 98 N. W. 190.    (3) The order for a special venire, and the manner in which the order was executed, denies to the defendant the equal protection of the law, and is in violation of the 14th amendment to the Constitution of the United States. Sec. 6566, Revised Statutes 1899, is unconstitutional. (4) The evidence shows that John A. Sheridan was neither a *de jure* nor a *de facto* member of the House of Delegates. (5) The court did not instruct the jurors on all the questions of law arising in the case which were necessary for their information in giving their verdict. R. S. 1899, sec. 2627. The court should have instructed the jury that before they

could take into consideration the acts and declarations of Murrell, they must find that the evidence proved a conspiracy had been formed between Murrell and the other defendants. State v. Kennedy, 75 S. W. 988. (6) The whole record herein made by the circuit attorney and the two judges of the criminal division of the circuit court of the city of St. Louis is in a chaotic state. An inspection of the record will show that it is in a condition of inextricable confusion. No transcript or proceeding was certified from court No..8 to court No. 9. The original files were carried at the behest of the circuit attorney from one court to another, and record entries were made in both courts in this State. R. S. 1899, p. 2541, secs. 2586, 2587, 2593, 2594. (7) There is no evidence tending to prove that defendant made the agreement alleged in the indictment. There is a material variance between the allegations of the indictment and the proof. The agreement as alleged is not the agreement which the evidence tends to prove. State v. Ames, supra; State v. Meysenburg, 171 Mo. 1. (8) (a) Instruction one is erroneous because it disregards the provisions of section 27, article 6, of the charter of St. Louis and the declaration of law therein is directly in conflict with said section 27, article 6. State ex rel. v. Barlow, 48 Mo. 16. (b) Instruction two has no evidence to support it and consequently is erroneous. There is no evidence tending to prove that T. Ed Albright had anything to do with the corrupt agreement alleged in the indictment, and if any such agreement was made he was no party to the agreement.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State; *Jos. W. Folk* of counsel.

(1)   In the case of State v. Bruns, 54 Mo. 274, the court held: "An application for a change of venue in a criminal case comes too late when the case is called for

trial, no previous notice having been given of the proposed application." State v. Caudle, 174 Mo. 388. There can be no question but what the application in this instance came too late, for the reason that a number of the jurors had been examined upon their *voir dire,* and the information which the defendant set up as reasons for the change of venue was certainly known to him prior thereto, because he bases the same upon publications and cartoons which had previously appeared in public print. (2) Objection is levelled against the sufficiency of the indictment. This objection, however, can not prevail and the lower court properly overruled the motion to quash. The case of State v. Schnettler, 181 Mo. 173, is sufficient to sustain the indictment in the case at bar. The charging part of the two counts in the indictment here involved are practically the same as that in the Schnettler case. In fact, all of the requisites set out by the court in its opinion in the Schnettler case are covered and complied with in this indictment. The charge that this indictment joins in one count nineteen separate and distinct offenses can not be upheld either in reason or according to the sound principles of law heretofore adjudicated. The authorities cited by defendant in this respect are not in point. All of the defendants are members of the same branch of the city government, and, as contemplated by the indictment, the two houses to which they respectively belong are a unit practically in every respect, so far as the enactment of the ordinance is concerned. They are a unit because they are intended to serve the same purpose and perform the same character of duties. In fact, any ordinance pending before one house necessarily comes before the other branch of the legislative department of the city before it can be enacted into and become a law. Before the indictment should be held illegal on the ground asserted by the defense, he should show some injury resulting to him on account of the joinder. (3) It is a matter of no consequence whether John A. Sheridan was a member of the

House of Delegates *de jure* or *de facto*. It can not, however, be denied that he was acting as a member and exercising the privileges and duties of the office. The evidence is clear upon this point. He took the oath of office and at the time laid in the indictment was to all intents and purposes a member of the House of Delegates. The question as to whether Sheridan was or was not a member is a matter of no consequence so far as the determination of the issues in the case at bar are involved. (4) It was not necessary for the court to instruct the jury that a conspiracy existed between the various members of the House of Delegates and the city council. The evidence in this case discloses that at all times stated by Murrell in his testimony with reference to the agreement between defendant and himself as the agent of Butler, the defendant was present. Under such circumstances, declarations made by a party to the crime are admissible against the accused, and become declarations of the accused himself, because agreed to at the time. (5) The evidence proves beyond question that defendant made the agreement alleged in the indictment. There is absolutely no variance between the allegations of the indictment and the proof. The authorities cited by defendant are not in point.

FOX, J.—The trial and conviction in this cause were based upon the first count of the indictment; it is as follows:

"The grand jurors of the State of Missouri within and for the body of the city of St. Louis, now here in court duly impaneled, sworn and charged, upon their oaths present:

"That on or about the twenty-eighth day of November, in the year one thousand eight hundred and ninety-nine, the city of St. Louis was a municipal corporation in the State of Missouri aforesaid, and that the legislative power of the said city of St. Louis was by law vested in a Council and a House of Delegates styled the Munic-

ipal Assembly of St. Louis, the members whereof were elected by the citizens of said city, and that before any measure and proposition could become a law and ordinance of said city, it was necessary and requisite that the same should be duly passed and enacted by a majority vote of the members of said Council and House of Delegates respectively, and approved by the Mayor of said city; that at the said city of St. Louis and on or about the said twenty-eighth day of November, in the year one thousand eight hundred and ninety-nine, Edmund Bersch, Otto Schumacher, John A. Sheridan, Chas. J. Denney, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner were then and there public officers of the said city of St. Louis, to-wit, members of the said House of Delegates and of the said Municipal Assembly of St. Louis, duly elected and qualified, and were then and there acting in the official capacity and character of members of said House of Delegates and of the said Municipal Assembly; that there was then and there pending and undetermined before the said Municipal Assembly for the consideration, opinion, judgment and decision of the members thereof in the said House of Delegates and before the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner in their said official capacity and character as members of said House of Delegates and of said Municipal Assembly of St. Louis a certain measure, matter, cause and proceeding in the nature of a proposed ordinance of the said city of St. Louis, designated and known as Council Bill No. 44, wherein and whereby it was proposed that the city of St. Louis (by ordinance duly passed and en-

acted by the said Municipal Assembly, and approved by
the mayor of said city) should authorize and direct the
Board of Public Improvements of said city of St.
Louis to light certain designated streets, avenues, side-
walks, alleys, wharves and public grounds and squares
of the said city of St. Louis after the first day of Jan-
uary, one thousand nine hundred, and should designate
the fund out of which the cost thereof should be paid;
that it then and there became and was the public and of-
ficial duty of the said Edmund Bersch, Otto Schuma-
cher, John A. Sheridan, Charles J. Denny, Adolph Ma-
dera, John H. Schnettler, Emil Hartman, Charles A.
Gutke, Louis Decker, T. Ed. Albright, John Helms, Ju-
lius Lehman, Charles F. Kelly, Jerry J. Hannigan, Wil-
liam M. Tamblyn and Henry A. Faulkner as members
of said House of Delegates in their official character and
capacity as aforesaid to give their vote, opinion, judg-
ment and decision upon the said measure, matter, cause
and proceeding, and for or against the said proposed or-
dinance without partiality or favor; that they, the said
Edmund Bersch, Otto Schumacher, John A. Sheridan,
Charles J. Denny, Adolph Madera, John H. Schnettler,
Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed
Albright, John Helms, Julius Lehman, Charles F.
Kelly, Jerry J. Hannigan, William M. Tamblyn and
Henry A. Faulkner, well knowing the premises, but un-
lawfully and corruptly devising, contriving, scheming
and intending to prostitute, betray and abuse their
trust and to violate their duty as aforesaid as members
of the said House of Delegates and of the said Munici-
pal Assembly, did, at the said city of St. Louis, and on
or about the said twenty-eighth day of November in the
year one thousand eight hundred and ninety-nine, un-
lawfully, corruptly and feloniously, directly and indi-
rectly, solicit, propose, procure, accept and receive a cer-
tain promise and understanding to make a cer-
tain gift, consideration, gratuity and reward to them,
the said Edmund Bersch, Otto Schumacher, John A.

Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner under an agreement that their votes, opinion, judgment and decision (as public officers as aforesaid and as members of the said House of Delegates and said Municipal Assembly) should be given for and in favor of the passage and enactment of the said measure, matter, cause and proceeding and for and in favor of the passage and enactment of the said proposed ordinance of the said city of St. Louis then and there pending and brought before the said House of Delegates and before them, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, in their said official capacity and character as members of the said House of Delegates as aforesaid, and under an agreement that they, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner would and should perform their said public and official duty in the premises with partiality and favor, and otherwise than according to law; and that they, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn, and Henry A. Faulkner did then and there unlawfully, corruptly and feloniously solicit, propose, procure, make and enter into a certain corrupt bargain, agreement and

covenant with one Edward Butler by and under which said corrupt bargain, agreement and covenant a large sum of money, to-wit, the sum of $47,500, lawful money of the United States, was by the said Edward Butler placed in the hands of the said Charles F. Kelly, who was then and there a member of the House of Delegates and of the said Municipal Assembly, duly elected and qualified, the said Charles F. Kelly having been theretofore selected, designated and appointed by the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as their agent and representative to confer with, arrange with and receive from the said Edward Butler the said sum of $47,500, upon the express promise, undertaking, agreement and understanding by and between the said Edward Butler and the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed. Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn, and Henry A. Faulkner, in pursuance of the corrupt bargain, agreement and covenant aforesaid that the said money was a bribe to the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed. Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as public officers as aforesaid and in their official capacity and character as aforesaid, that they, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed. Albright, John Helms, Julius Lehman,

Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as members of the House of Delegates and in their said official capacity and character, should and would give their vote, opinion, judgment and decision for and in favor of the said measure, matter, cause and proceeding and for and in favor of the passage and enactment of the said proposed ordinance when the same might and should be brought before the said House of Delegates and before them the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn, and Henry A. Faulkner, in their said official capacity and character as aforesaid; and upon the express promise, undertaking, agreement and understanding that in the event the said proposed ordinance should be passed and enacted by the said Municipal Assembly, that is to say, by the said Council and said House of Delegates respectively, the said sum of $47,500 should be wholly delivered and paid over to them, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as a gratuity, reward and bribe to them for their votes as members of said House of Delegates for and in favor of the passage and enactment of said proposed ordinance; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

The record in this cause discloses that this indictment was presented by the grand jurors in the circuit court of the city of St. Louis; it was assigned to Division No. 8 of that court for final disposition. Upon application, defendant Julius Lehman, with some of the other defendants, filed their application for a change of venue

on the ground of the prejudice of the judge presiding in Division No. 8 of said court. Upon such application, the cause, as to the defendants in such application, was transferred to Division No. 9 of said circuit court of the city of St. Louis. In Division No. 9, on July 13, 1903, upon application of defendants herein, a severance was granted and the trial proceeded.

Pending the examination of some of the jurors, upon their *voir dire,* defendant caused to be served upon the circuit attorney notice that on the fourteenth of July he would apply for the removal of the cause to the circuit court of some county in the State, on account of the minds of the inhabitants of the city of St. Louis being so prejudiced against the defendant that a fair trial could not be had in said city. On the fourteenth of July, 1903, this application was presented to the court and was denied for the reason that the application came too late; and the court refused to hear any evidence upon it, to which action of the court exceptions were duly preserved. Following the denial of this application, the jury was empaneled, and at the close of the testimony, the court instructed the jury as follows:

"By the indictment filed in this case on the fourth of October, 1902, Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Julius Lehman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Emil Hartman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, are jointly charged with the offense of bribery. The defendant Julius Lehman is now alone on trial and pleads not guilty.

"It is the duty of the court to instruct you on the questions of law arising in this case, and it is your duty to receive such instructions as the law of the case, and to find the defendant either guilty or not guilty according to the law as declared in these instructions, and the evidence as you have received it under the direction of the court.

"1.   You are instructed that under the laws of the State of Missouri, the city of St. Louis is a municipal corporation, and was such at the dates mentioned in the indictment, November 28, 1899, and at the dates mentioned in the evidence; that the legislative power of the city of St. Louis is and was at the times aforesaid vested in a Council and a House of Delegates, together styled the Municipal Assembly of St. Louis; the members whereof are and were elected by the citizens of the said city, and upon election and qualification, are public officers of said city; and that before any measure or proposition can or could at the times aforesaid become a law and ordinance of said city, it is and was necessary and requisite that the same should be duly passed and enacted by a majority vote of the members of said Council and House of Delegates respectively, and approved by the Mayor of said city; that in the event a measure or proposed ordinance should be introduced in that branch of the Municipal Assembly known as the Council, and by that branch passed and enacted, the same would be certified to and delivered to the House of Delegates for the consideration and vote of the said House of Delegates; that the right of the said city of St. Louis to authorize and direct the Board of Public Improvements of said city of St. Louis to light certain designated streets, avenues, sidewalks, alleys, wharves, public grounds and squares of the city of St. Louis after the first day of January, 1900, and designate the fund out of which the cost thereof should be paid, could be exercised only by ordinance passed and signed or approved as above stated.

"2.   If upon consideration of all the evidence, you believe and find beyond a reasonable doubt from the evidence in the case that on or about the twenty-eighth day of November, 1899, the defendant Julius Lehman, and the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Emil Hartman, Charles F. Kelly,

Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner were members of said House of Delegates; that there was then and there pending and undetermined before said Municipal Assembly and brought before said Municipal Assembly for the consideration, opinion, judgment and votes of the members thereof, a certain ordinance known and styled as Council Bill 44, wherein and whereby it was proposed that said city of St. Louis (by said ordinance duly passed and enacted by the said Municipal Assembly and approved by the Mayor of said city), should authorize and direct the Board of Public Improvements of said city of St. Louis to light certain designated streets, avenues, sidewalks, alleys, wharves, public grounds and squares of said city of St. Louis after the first day of January, 1900, and should designate the fund out of which the cost thereof should be paid; that the defendant Julius Lehman and said other persons hereinbefore named as defendants in the indictment, knowing of the pendency of said Council Bill No. 44, did at the city of St. Louis, on or about the twenty-eighth day of November, 1899, unlawfully, corruptly and feloniously, directly or indirectly solicit, propose, procure, accept and receive a certain promise and undertaking to make a certain gift, consideration, gratuity and reward to them, the said defendant Julius Lehman and other defendants in this indictment hereinbefore named, under an agreement that their votes, opinions, judgments and decisions as public officers aforesaid, and as members of said House of Delegates and said Municipal Assembly, should be given for and in favor of the passage and enactment of the measure then known as Council Bill No. 44 aforesaid, then pending before said House of Delegates and before said defendants in their said official capacities and characters as members of the said House of Delegates and of the Municipal Assembly (if you find from the evidence that said Council bill was so pending in said House of Delegates at said time) ; and under an

agreement that they, the said defendant Julius Lehman and other defendants in said indictment and hereinbefore named, would and should perform their said public and official duties in the premises with partiality and favor and otherwise than according to law, and that they, the said defendant Julius Lehman and other defendants in said indictment and hereinbefore named, did then and there unlawfully, corruptly and feloniously solicit, propose, procure, and make and enter into a certain corrupt bargain, agreement and covenant with one Edward Butler by and under which said corrupt bargain, agreement and covenant made by this defendant, Julius Lehman, and said other defendants in said indictment and hereinbefore named, and said Edward Butler as aforesaid (if you believe and find from the evidence that said corrupt bargain, agreement and covenant was made), a large sum of money, to-wit, the sum of $47,500, lawful money of the United States, was by said Edward Butler placed in the hands of Charles F. Kelly, one of the defendants in said indictment and hereinbefore named, who was then and there a member of said House of Delegates and said Municipal Assembly, and that you find the said Charles F. Kelly had been theretofore selected, designated and appointed by said defendant Julius Lehman and the said other defendants in said indictment and hereinbefore named, as their agent and representative to confer with, arrange with and receive from the said Edward Butler the said sum of $47,500 upon the express promise, undertaking, agreement and understanding by and between said Edward Butler and said defendant Julius Lehman and the other defendants in said indictment and hereinbefore named, in pursuance of the corrupt bargain, agreement and covenant aforesaid, that said money was a bribe to said defendant Julius Lehman and the other defendants in said indictment and hereinbefore named as public officers, as aforesaid, and in their official capacity and character as aforesaid, that they, the said defendant Julius Lehman and

the other defendants in said indictment and hereinbefore named, as members of the House of Delegates, and in their said official capacity and character should and would give their votes, opinions, judgments and decisions for and in favor of said Council Bill 44, and for and in favor of the passage of and enactment of said Council Bill 44, when the same might and should be brought before said House of Delegates and before them, the said defendant Julius Lehman and the other defendants in said indictment and hereinbefore named, in their official capacity and character as aforesaid; and upon the express promise, undertaking, agreement and understanding that in the event said defendant Lehman and the other defendants in said indictment and hereinbefore named, should vote for the passage by said House of Delegates of said Council Bill 44, said sum of $47,500 should be wholly paid and delivered over to them, said defendant Julius Lehman and the other defendants in said indictment and hereinbefore named, as a gratuity, reward and bribe to them for their votes as members of said House of Delegates for and in favor of the passage and enactment of said proposed ordinance by said House of Delegates, then you will find this defendant Julius Lehman guilty of the offense of bribery as charged in the indictment and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than seven years; and unless you so find the facts to be you will acquit the defendant Lehman.

"3. If you find and believe from the evidence that any witnesses who have testified on the part of the State in this case were concerned in and participated in the commission of the same offense (if you believe and find from the evidence the offense was committed) which by the indictment is charged against this defendant Julius Lehman, and the other defendants named in said indictment and hereinbefore named in these instructions, then such witnesses are to be considered as accomplices.

"The court instructs you that you are at liberty to convict the defendant on the uncorroborated testimony of an accomplice alone, if you believe the statements given by said accomplice in his testimony are true in fact and sufficient in proof to establish the guilt of the defendant, but you are instructed that the testimony of an accomplice in crime when not corroborated by some person or persons not implicated in the crime as to material matters to the issues, that is, matters connecting the defendant with the commission of the crime charged against him and identifying this defendant as the perpetrator thereof, ought to be received by you with great caution, and you ought to be fully satisfied of its truth before you should convict the defendant on such testimony.

"4. Feloniously, as used in this indictment and these instructions, means wickedly and against the admonition of the law.

"Corruptly, as used in the indictment and these instructions, means wrongfully, that is, it means the doing of an act with the intent to obtain an improper advantage inconsistent with official duty and the rights of others.

"5. The second count in the indictment is withdrawn from your consideration and you will only consider the first count.

"6. You are further instructed that the indictment contains the formal statement of the charge, but it is not to be taken as any evidence of defendant's guilt.

"The law presumes the defendant to be innocent and this presumption continues until it has been overcome by evidence which establishes his guilt to your satisfaction and beyond a reasonable doubt; and the burden of proving his guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant established to a moral certainty and beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground, ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence.

"You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight you will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his or her relation to or feeling towards the defendant or any of the State's witnesses, the probability or improbability of his statements, as well as all the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony."

The cause was submitted to the jury and they returned a verdict finding the defendant guilty of bribery, as charged in the indictment, and assessed his punishment at imprisonment in the penitentiary for a term of seven years.

It can serve no useful purpose to set out in detail all the testimony upon which this conviction is based; it will suffice to say that we have carefully read the testimony as disclosed in the record, and find that the State, after making all formal proof preliminary to the inquiry into the main facts constituting the offense charged, introduced Jno. K. Murrell, Wm. M. Tamblyn, John Helms and E. E. Murrell, colleagues of the defendant, Julius Lehman.

They detail minutely the entire transaction relating to the charge contained in the indictment and it is sufficient, in order to determine the legal propositions, to say that the testimony of the State tended to prove

the offense charged against this defendant in this indictment. The variance in the proof and charge, asserted by learned counsel for appellant, will be given due consideration in the course of the opinion.

In pursuance of the verdict as herein referred to, the court sentenced the defendant to imprisonment in the penitentiary. From this judgment defendant in due time and form prosecuted his appeal to this court and the record is now before us for review.

#### OPINION.

The record before us upon this appeal discloses numerous complaints of error committed by the trial court in the disposition of this cause. We will treat the assignment of errors in the order in which we find them in the brief of the learned counsel for appellant, and will give them such consideration as their importance merits and demands.

I. It is contended that the trial court committed error in refusing to hear testimony upon the application of defendant for change of venue.

The record discloses that the trial of this cause had begun, and the jurors were being examined as to their qualifications to sit in the trial of the cause. The court denied the application for change of venue on the ground that it was not timely made. There was no error in the action of the trial court denying the application and refusing to hear evidence upon it. Section 2576, Revised Statutes 1899, specifically designates the procedure in applications for changes of venue. While it does not in terms provide that the application shall be made before the cause proceeds to trial, that it must be presented before that time is clearly contemplated by the terms of the statute. Reasonably previous notice of such application is provided for, and the only reasonable and fair deduction to be made from that provision is that the notice must precede the commencement of the trial. The

sufficiency or reasonableness of the notice is not the question involved. This court, if the conditions existed, might treat a few moments notice before the case is called for trial, as being reasonable, and the action of the court, when a proper showing is made under such circumstances, denying the application, might constitute error. But that is not this case, and this court is unwilling to sanction the practice of extending the right to parties litigant of giving notice and presenting an application of this character, after the trial has begun. If the right can be maintained, after the announcement is made and jurors are being selected to try the cause, then upon the same principle it would exist at any time during the progress of the trial before a verdict was returned.

While courts, in the administration of the law, should carefully protect the rights of every citizen, in affording a fair and impartial trial before an unbiased jury; in the application of rules of practice to the statute providing for applications for changes of venue, no rule should be sanctioned that would make the statute an instrument of delay, rather than to promote fair and impartial trials. Unless there is some definite limit fixed as to the time when an application of this kind may be presented and considered by the court, then there would be no significance attached to the commencement of a trial, for during its progress an application for a change of venue might be injected into it, and result in the venue of the cause being changed. Doubtless, it was considerations of that character that induced the clear announcement of the rule in State v. Burns, 54 Mo. l. c. 281. WAGNER, J., speaking for the court in that case, said: "It is not a reasonable notice to notify the circuit attorney of the intended application just as the trial had commenced, and this court has decided, that an application for a change of venue is properly overruled when not applied for until the cause is called for trial—no previous notice having been given of the application." [See

State v. Caudle, 174 Mo. 388; State v. Blitz, 171 Mo. 530.]

II. Appellant contends that the indictment is insufficient to support this conviction. The contention upon this proposition is thus stated by counsel for appellant: "The indictment is double; because it joins in one count nineteen separate and distinct offenses. If it is not double, it states no offense, because there is no such offense as joint bribery based upon a combination of officers to sell their votes."

It is clearly indicated by the oral argument as well as in the presentation made in the briefs by counsel for both the respondent and appellant, that this contention presents the most serious and important proposition in this cause for solution. We fully agree with counsel that the question as to the validity of the indictment overshadows all others, and the correct answer to the question involved in that contention settles this case.

The count in the indictment upon which this conviction was had is predicated upon the first subdivision of section 2085, Revised Statutes 1899. It provides:

"Every judge or justice of any court, justice of the peace, member of the Legislature, or officer or employee thereof, and any other public officer of this State, or of any county or city, town or township thereof, who shall, directly or indirectly, accept or receive any gift, consideration, gratuity or reward, or any promise or undertaking to make the same: First, under any agreement that his vote, opinion, judgment or decision shall be given for any particular person, or in any particular manner, or upon any particular side, or more favorable to one side than the other, in any question, election, matter, cause or proceeding which may be pending or be brought before him in his official capacity, or that he shall neglect or omit to perform any official duty, or perform the same with partiality or favor, or otherwise than according to law," etc.

The indictment in this cause, after making the formal allegations as to the municipality, the House of Delegates and the election of the defendants as members of such House of Delegates; the pendency of Council Bill No. 44, the nature and purpose of said bill, charged: "That they, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed·Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner did then and there unlawfully, corruptly and feloniously solicit, propose, procure, make and enter into a certain corrupt bargain, agreement and covenant with one Edward Butler by and under which said corrupt bargain, agreement and covenant a large sum of money, to-wit, the sum of $47,500, lawful money of the United States, was by the said Edward Butler placed in the hands of the said Charles F. Kelly, who was then and there a member of the House of Delegates and of the said Municipal Assembly, duly elected and qualified, the said Charles F. Kelly having been theretofore selected, designated and appointed by the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as their agent and representative to confer with, arrange with and receive from the said Edward Butler the said sum of $47,500 upon the express promise, undertaking, agreement and understanding by and between the said Edward Butler and the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, in pursuance of the corrupt bargain, agreement and

covenant aforesaid that the said money was a bribe to the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John A. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as public officers as aforesaid and in their official capacity and character as aforesaid, that they, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, as members of the House of Delegates and in their official capacity and character, should and would give their vote, opinion, judgment and decision for and in favor of the said measure, matter, cause and proceeding and for and in favor of the passage and enactment of the said proposed ordinance when the same might and should be brought before the said House of Delegates and before them the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed. Albright, John Helms, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A. Faulkner, in their said official capacity and character as aforesaid; and upon the express promise, undertaking, agreement and understanding that in the event the said proposed ordinance should be passed and enacted by the said Municipal Assembly, that is to say, by the said Council and House of Delegates respectively, the said sum of $47,500 should be wholly delivered and paid over to them, the said Edmund Bersch, Otto Schumacher, John A. Sheridan, Charles J. Denny, Adolph Madera, John H. Schnettler, Emil Hartman, Charles A. Gutke, Louis Decker, T. Ed Albright, John Helms, Julius Lehman, Charles F. Kelly, Jerry J. Hannigan, William M. Tamblyn and Henry A.

Faulkner, as a gratuity, reward and bribe to them for their votes as members of said House of Delegates for and in favor of the passage and enactment of said proposed ordinance.''

It will be observed that the first count of the indictment, upon which defendant was convicted, does not proceed upon the theory that the defendant voted for the passage of the ordinance pending before the Municipal Assembly, and in consideration of such vote each one received his part of the fund; but the offense charged is the making of the corrupt agreement that they would vote in favor of the pending measure, and this question is narrowed down to this proposition: That is to say, these defendants, all members of the same department of the city government, the duties resting upon each being identical, if they jointly make a corrupt agreement to vote for a measure pending, or that may be brought before them, must the State charge them separately by indictment or information with making such agreement, or may they be charged jointly with the commission of that act? It may be that the joint corrupt agreement may result in the commission of separate and distinct offenses by all those who participated in the making of it, but the acts which resulted in the commission of the distinct offenses were joint, and the proof of the guilt of one who participated in the making of such agreement would necessarily prove the guilt of the others who were parties to it. In other words, their crimes may be distinct; but their acts, which resulted in the commission of the crime, are joint.

We have carefully considered all the authorities cited by counsel for appellant, as well as respondent, upon the proposition now being discussed. None of them are decisive of the question involved, and at last we must find the solution of this legal proposition in the fair and reasonable application of the principles of criminal pleading. The object of all pleading, whether civil or criminal, should be to simplify the issues, and

to present them concisely to all parties who may have an interest in the subject-matter.

The defendants in the indictment which is challenged were all members of the House of Delegates, one branch of the Municipal Assembly of the city of St. Louis; the offense with which they are charged is that of bribery as defined in the first subdivision of Revised Statutes 1899, sec. 2085. The essence of the offense charged is that defendants jointly made and entered into a corrupt agreement to vote for a measure then pending before the Municipal Assembly. All of the defendants are equally interested in this charge, for it is alleged that they jointly made the corrupt agreement, and by the commission of such act, they are charged with being guilty of bribery. Is there any legal, valid or practical reason why such issue as is presented in the indictment should not be presented to all of them in one count and in one indictment? If their guilt depends upon the proof of a corrupt agreement, in which all participated, and the proof of the guilt of one necessarily involved the proof as to the others who were parties to the agreement, then we are unable to see how the purposes and objects of good pleading could be obtained by requiring the issue, in which all are equally interested, to be presented to each individual by a separate and distinct indictment or information against each person so interested. While it may be said that each member of the House of Delegates charged with this offense, in contemplation of law, made the corrupt agreement; yet such distinct agreement, so contemplated, results from the joint act of all the defendants in making the joint corrupt agreement. It was one transaction, the same subject-matter, the same purposes were designed to be accomplished, the performance of the same functions rested upon all alike, and we are of the opinion that it is in harmony with the objects and purposes of good pleading, as well as with the spirit of the statute,

to present the issue made by this charge, to all who are interested, by joining them in one indictment.

The principle upon which this conclusion is reached finds support both by the text-writers and adjudicated cases.

In 2 Hawkins, Pleas of the Crown, chap. 25, sec. 89, the rule as to pleading in criminal cases is thus stated: "It seems certain that notwithstanding the offense of several persons can not but in all cases be several, because the offense of one man can not be the offense of another,' but every one must answer severally for his own crime, yet if it wholly arises from any such joint act which in itself is criminal, without any regard to any particular personal default of the defendant . . . the indictment may charge the defendants jointly and severally."

The rule is thus stated by SHAW, C. J., in Commonwealth v. Elwell, 43 Mass. l. c. 191: "The general rule is, as laid down in 1 Stark. Crim. Pl., c. 2, and other works of good authority, that where the same evidence, as to the act which constitutes the crime, applies to two or more, they may be jointly indicted. [See Hammond on Parties, 252; 2 Hawk., c. 25, sec. 89.] Nor is it an objection, that the fact, proved against two or more, constitutes a distinct species of legal and technical offense."

Bishop in his New Criminal Procedure, vol. 1 (4 Ed.), secs. 474-475, says, quoting from Lord HALE: " 'It seems, that to warrant such a joinder in the same indictment, the offenses must be of the same nature, and such as will admit of the same plea and the same judgment.' Distinguishing felony from misdemeanor, he adds: 'It does not appear to have been allowable to join charges of different felonies against different persons, in the same indictment, unless such felonies arose out of the same transaction.' While we have cases recognizing this form of the indictment as adequate in law, it is not encouraged, and is little used. Nor is it

certain that it would be tolerated in all our States. The court, in its discretion, may quash such an indictment."

The rule is clearly announced and authorities cited, in State v. Winstandley, 151 Ind. 316: " 'The general rule as to the joinder of defendants, as laid down in works of good authority,' it was said in Elliott v. State, 26 Ala. 78, 'is, that where the same evidence, as to the act which constitutes the crime, applies to two or more, they may be jointly indicted.' And in Volmer v. State, 34 Ark. 487, the court said: 'The rule is well settled that several may be jointly indicted for offenses arising wholly out of the same joint act or omission.' In State v. Forcier, 65 N. H. 42, 17 Atl. 577, it was said, citing 1 Bish. Cr. Proc., sec. 467; 1 Whart. Cr. Law, sec. 429; and Com. v. Sloan, 4 Cush. 52, that, 'If more persons than one engage in the doing of a criminal thing in such a way as to make each one guilty of the crime, they may be indicted jointly, not necessarily in several counts, but in a single count.' "

In Rex v. Trafford (Court of King's Bench), 1 Barn. & Adol. l. c. 887, the rule as herein announced was applied. The indictment in that case was for a public nuisance against several defendants, all of whom acted separately; but the result of their separate acts constituted the offense. Lord TENTERDEN, C. J., delivered the judgment of the court. His lordship says: "By this verdict it appears that the several defendants, whose case is submitted to the court (some having been acquitted), have acted separately in raising the fenders and banks of their respective lands, but the grievance complained of is the result and effect of the acts of all jointly, and, therefore, there is no objection to an indictment including all."

We might call to our aid numerous other cases in support of the principle underlying the conclusion reached upon the proposition now being discussed; but it will serve no useful purpose to do so. We might add, that our statute, Revised Statutes 1899, sec. 2535, must

not be overlooked in the determination of this challenge as to the validity of the indictment. It provides, substantially, that no indictment or information shall be deemed invalid for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant, upon the merits. This statute is very broad, and doubtless contemplates, to some extent, the relaxation of the strict rules applicable to pleading in criminal cases. This is indicated by the application of this statute, by this court, to an indictment involving a proposition similar to the one in the case at bar.

In State v. Edwards, 60 Mo. 490, two persons were jointly indicted for selling liquor without license; the evidence, upon the trial, was that each of the defendants was guilty of an entirely separate and distinct offense. SHERWOOD, J., in discussing the question involved in that case, as to the joining of the two defendants in the same indictment, makes the clear application of our statute. He says: "In England, the practice has prevailed—subject, however, to the discretionary power of the court to direct the indictment to be quashed—to indict a number of persons for several offenses of the same nature, but there it must be laid *separaliter;* or, otherwise, the indictment thus framed will be quashed. The word *separaliter* is held to make an indictment drawn in this manner tantamount to 'several indictments' (Rex v. Kingston, 8 East 41); and by this method is obviated an objection like the one we have been considering to the present indictment. And, were it not for the latitudinous provisions of our statute in reference to practice in criminal cases (2 Wagn. Stat. 1872, sec. 27, p. 1090), we should hold that objection a fatal one; and that the conviction herein could not be upheld. But as the evidence clearly shows that the defendants were each guilty of an act, or acts, which would well have warranted their separate indictment and conviction, it is not seen that there is any such 'defect or imperfection' in conducting the prosecution against them, as has

tended 'to the prejudice of the substantial rights of the defendant, upon the merits.' ''

The general rule must be conceded, that where the offense of several defendants are separate and distinct, arise out of separate and distinct agreements or transactions, they should not be joined in the same indictment; but that is not this case. The defendants here are not charged with corruptly voting for the measure pending before the Municipal Assembly; they are charged jointly with making a corrupt agreement to vote. That agreement is the essence of the offense; when it was consummated, the offense was complete, and it was immaterial whether they voted or not, or whether the measure was adopted or defeated. It is charged that they acted jointly in making the corrupt agreement; this simply means that each of them made it, and if their joint act results in the commission of a separate and distinct offense, by each of them, we are unable to discover any prejudice to their substantial rights, by jointly charging them in the same indictment, as was done in this case.

Numerous cases are cited by learned counsel for appellant, in support of the contention that this indictment is invalid. A careful analysis of them will demonstrate that they are not in conflict with the conclusion herein announced.

In U. S. v. Kazinski, Fed. Cases No. 15508, there was a charge of violating what is commonly known as the Neutrality Act. It will be noted that the section creating the offenses is subdivided; it in substance prohibits, first, any person from enlisting as a soldier in the service of any foreign prince, etc., secondly, it makes it an offense to hire or retain another person to so enlist. The court held, and we think properly so, that the offense created by the person's act of enlisting, was several and for that offense the indictments must be separate. The act making the offense was a personal one; no one could do the act or participate in it, except the person enlist-

ing. But to illustrate, suppose the statute had prohibited the making of an agreement to enlist, and that all of the defendants had jointly made such agreement, could it then be held that they could not be joined? We think not. In the former, the evidence that one of the defendants is enlisted, would not establish the fact that his codefendants enlisted; but in the latter, evidence of a joint agreement to enlist, would be the same as to all those participating in it, and equally establish their guilt.

State v. Hall, 97 N. C. 474, is distinguished from the case at bar from the fact that the defendants were members of different branches of the municipal government; in one count, the defendants were charged as a board of "audit and finance committee;" in another count, the mayor and aldermen were charged with neglect of duty. The indictment in that case was properly held insufficient.

In McGehee v. State, 58 Ala. 360, it will be observed that the court simply announces the general rule that two offenders should not be joined in the same indictment, for separate and distinct offenses; but it is clearly indicated in that case that the court was treating of offenses committed at different times, and where it would be necessary to offer proof of two or more independent transactions.

In Commonwealth v. Miller, 2 Parson Equity Cases 480, the charge was against the judges, inspectors and clerks of an election; it was held that they could not all be joined in one indictment, for the reason that the offenses were different, and the duties of each distinct and separate. The court said:

"The rule of law seems to be this: where the offense arises wholly from any joint act, which in itself is criminal without regard to any particular personal defendant, the indictment may charge the defendants either jointly or severally. But where the offense charged doth not wholly arise from the joint act of all the de-

fendants, but from such act joined with some personal and particular defect, or omission of each defendant, without which it would be no offense, the indictment must charge them severally and not jointly.''

The distinction is made clear between that case and the one at bar. In the one, the officers were different; the functions to be performed were separate and distinct; the proof applicable to one was not applicable to the other. In the case before us, the officers are the same, all members of the House of Delegates, with the same duties resting upon them; the act which resulted in the commission of the offense is charged to be the joint act of all, and the proof of the guilt of one is the proof of the guilt of all others who participated in the making of the corrupt agreement.

State v. Wainright, 29 S. W. 981, was a case in which three persons were joined in an indictment for failure to work the road, in person or by substitute, or pay the amount of money provided by law, in lieu of labor. It was correctly held that the joinder was improper. It is apparent that these offenses were entirely separate and distinct, and the proof that one failed to work or pay the money in lieu thereof, would not establish the guilt of the other. Hence the distinction from the case before us.

The recent case of State v. Ames, by the Minnesota Supreme Court, 98 N. W. 190, furnishes no support for the contention of appellant. It is simply held by one member of the court, that the receipt from different persons, by an officer, of money as a bribe, constitutes but one offense. Two members of the court hold the reverse, that the receipt of such money from each individual would constitute a separate offense; but they indicate that if there was a joint understanding or agreement, as to the money to be paid, it would constitute but one offense. This case in no wise militates against the conclusion announced herein.

We have given careful consideration to all the au-

thorities cited by appellant, in support of the contention now being discussed, and deem it unnecessary to further extend our review of them.

It is earnestly argued that, "it is a legal and a physical impossibility for sixteen members of a legislative body to give their joint votes for or against any bill that they may be required to vote upon; each one must give his separate vote and each one must have accepted the reward for his separate vote." This argument suggests a clear misconception of the charge in the first count of the indictment, upon which this conviction is based. We must keep in view the statute defining bribery of a public official. While the statute does not undertake to create any grades of the offense, it does designate the different acts, when done by a public official, that constitute the offense of bribery.

First. The acceptance or receipt by a public officer of any gift, consideration, gratuity or reward, or the acceptance or receipt of any promise or undertaking to make such gift, gratuity or reward, in pursuance of an agreement to vote in a particular manner, upon a measure which is pending or may be brought before him, in his official capacity, is bribery.

Second. If the officer accepts or receives the bribe, in consideration that he has given his vote in a particular manner, upon the measure before him, it is bribery.

The charge in the indictment upon which defendant was convicted, was not for having accepted or received the consideration upon an agreement to vote in favor of the pending measure, nor is it a charge for receiving any gratuity in consideration of having given his vote in a particular manner; but the offense charged in the indictment is clearly under the provision for having accepted or received the promise or undertaking to make the gift of $47,500, in pursuance of an agreement to vote for the pending measure.

This statute is a denouncement of bribery in all its

forms, and under the charge in the indictment, we repeat, it is immaterial whether the agreement was carried out by the parties or not; the offense was complete upon the acceptance of the promise of the gift, in pursuance of the corrupt agreement to vote in favor of the measure pending before the Municipal Assembly.

If two or more public officials, burdened with the performance of the same functions, jointly enter into a corrupt agreement, in consideration of a promise of a gift of money, to vote in favor of a measure pending, or that may be pending before them, in their official capacity, we see no valid objection to joining them in one indictment.

III.   Complaint is made by appellant in respect to the order for special venire, and the manner of its execution; also challenging the constitutionality of Revised Statutes 1899, sec. 6566.   No authorities are cited, nor is the proposition discussed; however, we have examined the disclosures of the record before us on this question, and it is sufficient to say that we find no such error in the order or in the manner of its execution, as would warrant the reversal of this case.   Statutes providing for summoning jurors have so frequently been in judgment before this court, and so uniformly held to be merely directory, that we deem it unnecessary to pursue that subject further; it is only necessary to add that we are of the opinion that section 6566, supra, is not violative of any of the provisions of the Constitution, either State or Federal.

IV.   It is unnecessary in this cause to determine whether Sheridan was a *de jure* or *de facto* officer.   Because the defendants are charged jointly with entering into the corrupt agreement, by no means can it be insisted that unless all of them are shown to have participated in it, it must result in the acquittal of all of them.   This indictment simply charges that the defendants jointly entered into a corrupt bargain, and while it

may be said that to show that defendant entered into a single, separate and distinct agreement at a different time to the one charged, would constitute a variance, yet it is not incumbent upon the State, to warrant the conviction of defendant, to show that each and every defendant charged participated in the agreement, and the failure to so prove would not constitute a variance.

It is quite common in pleading to charge several persons with doing an act, and upon the trial it is disclosed that some of them did not participate in the commission of it. Had these defendants all been placed upon trial at one time, it would have been the duty of the court to have instructed the jury that under the evidence they might convict one or more of the defendants and acquit the others, accordingly as their guilt or innocence is made to appear from the evidence.

The defendants in this cause, who participated in the corrupt bargain and agreement, should be convicted, and those who did not should be acquitted. We are unwilling to sanction the contention of appellant that in order to convict any of them under the indictment, it is necessary to show that they were all parties to the agreement.

V. It is next urged that the court erred in failing to instruct the jury that before they would be authorized in considering the acts and declarations of Murrell, they must first show that there was a conspiracy between Murrell and the other defendants. The question of conspiracy under the evidence as disclosed by the record, is not involved in this case. It was simply a question as to who was present and participated in the making of the agreement. The declarations of all the parties present at the time the transaction was being discussed, is competent, and any statements by one of the parties, in the presence of the other, concerning the agreement, is admissible, and in order to warrant the jury in considering such statements, it is not necessary to find that

there was a conspiracy. The material declarations of Murrell, so far as this case is concerned, were made in the presence of defendant, and there was no error committed by the court by reason of its failure to instruct on the subject of conspiracy. If the jury believed the testimony of Murrell and the other witnesses, it was ample to support the verdict, and by no means, from the record before us, was it necessary for the jury to find that there was a conspiracy.

VI. It is next earnestly urged that the record in this cause is in a state of inextricable confusion, so much so that Division No. 9 did not acquire jurisdiction of the cause, and it was error for the court, in the condition of the record, to proceed with the trial. This cause was assigned and pending in Division No. 8 of the circuit court of the city of St. Louis; upon application of the defendant for a change of venue, on the ground of prejudice of the judge presiding in said division, in pursuance of the provisions of R. S. 1899, p. 2541, sec. 38, the cause was transferred to Division No. 9 of said court. It is claimed that there should have been a transcript of the proceedings in Division No. 8 duly and regularly certified to Division No. 9 of said court, in order to confer jurisdiction. We are unable to give our consent to this claim. Divisions Nos. 8 and 9 are a part of the same court; there is but one clerk for both divisions, who is the custodian of all the proceedings pending, and the statute does not contemplate in cases transferred from one division to another, that there shall be a certified transcript of the proceedings. That would be nothing more nor less than the clerk of the court certifying a transcript to be deposited with himself; the result of such action would simply be the landing of a cause in the custody of the same officer from whom the transcript emanated. It is unlike causes where the venue is changed from one court to another, in those cases the record must

be duly authenticated by the proper officer, to confer jurisdiction.

In this case the venue is not changed, the cause is tried in the same court in which it originated; it is simply transferred for trial under the provisions of the statute, from one division to the other of said court; and the said cause was legally pending for new trial in Division No. 9, by the force and effect of the order transferring it from Division No. 8. Division No. 9 had before it, in the custody of its proper officer, the indictment and other file papers in the cause, and nothing more was required to warrant the court in proceeding with the trial. [See case of Goddard to the use of Hyde, Assignee, v. Delaney, 181 Mo. 564.]

VII. This brings us to the only remaining question in this cause; that is as to the correctness of instructions numbered 1 and 2. It is said by appellant that number 1 disregards, and is in conflict with section 27, article 6, of the charter of the city of St. Louis. Counsel do not point out in what respect the conflict exists. If the suggestion of conflict means that the court failed to require the jury to find that the ordinance was prepared and submitted by the Board of Public Improvements, with an estimate of the cost of the public work to be done indorsed thereon by the president of the board, as provided by section 27 of the charter, then we say in answer to the suggestion, that it was not necessary for the court to submit to the jury the question as to the legality or illegality of the ordinance. If the ordinance was pending before the Municipal Assembly, and the defendant was bribed to vote in favor of it, or accepted a promise of a bribe to vote for it, then it became immaterial whether the ordinance was valid or invalid.

It is not necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that could be enforced. The crucial test may

thus be stated: "Is a matter pending before the officer in his official capacity, or one that may be brought before him in such capacity?" It is not a question as to the force and vitality of the ordinance pending; it was a subject that the Municipal Assembly had the right to legislate upon; the ordinance was pending before it; defendant was a member of that assembly; he was not only authorized to vote upon it, but it was his duty to do so, and any corrupt agreement or promise, which had for its purpose an improper influence upon his action in respect to said measure, has all the elements of bribery under the statute, and it makes no difference whether the measure is a valid one or not. This distinction is clearly drawn in State v. Ellis, 33 N. J. 102, 97 Am. Dec. 707; State v. Butler, 178 Mo. 272.

As to the instruction numbered 2, it is claimed that Albright was included in the instruction, and that the evidence failed to prove that he was a party to the corrupt agreement alleged in the indictment. We are unable to see how the rights of defendant are prejudiced by that instruction. If Albright was not a party to the agreement, he should and doubtless will be acquitted; but that furnishes no reason why, if other defendants were parties to it, that they should also go acquit. The reasons herein assigned, in discussing the contention applicable to defendant Sheridan, are equally applicable to the point made upon this instruction, and it is unnecessary to further discuss it.

We have thus given expression to our views upon the legal propositions presented in the record before us. The defendant was granted a separate trial; his rights were not prejudiced by reason of the uniting the other defendants in the same indictment. The purpose of the statute in providing for a severance in all trials for felony, when requested by any defendant, was to avoid any injustice which might result by a joint trial, to any person charged jointly with others with the commission of crime, and the wise provision of the statute only empha-

sizes the conclusions herein announced, that defendant has suffered no injustice by reason of being charged jointly with others in the commission of this offense.

The witnesses were before the jury; if their testimony was believed by them, the verdict is fully supported. Some of the witnesses were accomplices; that fact was fully developed before the jury, and it was specially their province to determine their credibility and the weight to be attached to their testimony.

The court fully and fairly instructed the jury upon every phase of this case to which the facts were applicable.

Finding no reversible error in the trial of this cause, the judgment of the trial court is affirmed. All concur.