# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### SWENSEN et al. v. BENDER.

#### (Circuit Court of Appeals, Ninth Circuit. March 3, 1902.)

#### No. 720.

1. **TRIAL—ADMISSION OF EVIDENCE—ORDER OF PROOF**
   The order of proof is largely within the discretion of the court, and the admission of evidence without the requisite preliminary or connecting proof is not prejudicial error, where such proof is subsequently introduced.

2. **MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—EVIDENCE.**
   In an action by a servant against the master to recover for an injury caused by the caving in of a tunnel in which plaintiff was working, evidence of the character of the timbering was admissible on the issue of defendant's negligence, when supplemented by evidence tending to show that it was defective, and known to be so by defendant, and that such defects were responsible for the injury.

3. **SAME—CONTRIBUTORY NEGLIGENCE.**
   A servant injured by the caving in of a tunnel in which he was working, and which was insufficiently timbered, cannot be charged with contributory negligence as matter of law, where it was shown that he was inexperienced in the work, and there was evidence tending to show that the master assured him the place was safe, and that planks were put up by direction of the master to hide the danger from the workmen.

4. **SAME—NEGLIGENCE OF FELLOW SERVANT.**
   Negligent acts of fellow servants cannot be relied on as a defense to an action by a servant for a personal injury, where it is clearly shown that such acts were done under the direct orders of the master.

5. **EVIDENCE—OPINIONS OF EXPERTS—HYPOTHETICAL QUESTIONS**
   It is proper to permit a witness testifying as an expert to answer a hypothetical question stating only facts which there is evidence fairly tending to prove, and it is not necessary, as a general rule, that such question should embrace all the facts of the case.

6. **MASTER AND SERVANT—ASSUMED RISKS.**
   A servant does not assume the risk of injury from the negligence of the master in failing to exercise ordinary care to make the place where the servant works reasonably safe, considering the nature of the employment.[1]

---

[1] Assumption of risks incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

114 F.—1

7. DAMAGES—PERSONAL INJURY—FUTURE INCAPACITY TO WORK.

Where there was evidence tending to show that plaintiff had, ever since the injury sued for, been incapaciated from work in a greater or less degree, and that such incapacity would continue for some time, it was not error to instruct that the jury in estimating the amount of his compensatory damages should take into consideration the loss sustained through inability to work "during the period of his incapacity and probable incapacity alleged in the complaint."

8. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.

If the charge of the court, in its own language, embraces all the points of law arising in the case, it is not error to refuse further instructions requested, although they correctly state the law. It is the duty of the court to simplify its directions to the jury, and a repetition in different language not only tends to confuse the jury, but to give undue prominence to the proposition repeated.

In Error to the Circuit Court of the United States for the Southern District of California.

Herbert Cutler Brown, for plaintiffs in error.

W. C. Petchner, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was brought by the defendant in error to recover damages for injuries alleged to have been received by him through the negligence of the plaintiffs in error, who were contractors engaged in the construction of the Third Street tunnel in Los Angeles, Cal. A trial of the case before a jury resulted in a verdict in favor of the defendant in error for $1,592.75, upon which verdict a judgment was duly rendered, and thereafter a writ of error was taken to have said judgment and all proceedings had in said cause reviewed by this court.

The errors relied upon for a reversal of the judgment relate to the admission of certain testimony, to the action of the court in refusing to grant a nonsuit, to alleged errors in giving instructions to the jury, and in refusing to give certain instructions asked for by the plaintiffs in error.

The complaint, after alleging jurisdictional facts, alleges:

"That on or about December 1, 1899, plaintiff was engaged in laboring with pick and shovel inside said tunnel, in the construction thereof, and that at said time plaintiff was unskilled in such work, and unfamiliar therewith; that on said first day of December said tunnel had been constructed inward a distance of about 200 feet; and on account of the increasing distance inward, the unusual character and (un)familiarity of such work to plaintiff, and the darkness of the interior of said tunnel, on a certain day about two weeks preceding said 1st day of December, plaintiff hesitated about proceeding with his work in said tunnel, fearing that the same might be dangerous, but the person employed by the defendant to superintend the work of construction of said tunnel, * * * and who at all times herein mentioned was in charge of the work in the interior of said tunnel, and who was in immediate control of plaintiff and his said work, seeing plaintiff's hesitancy to proceed with said work, and knowing that plaintiff feared danger therefrom, ordered this plaintiff, in the presence and hearing, and with the approbation, of defendant Anthon Swensen, to go ahead with his said work, and assured plaintiff that there was no danger therein or thereabout; that thereafter plaintiff was, up to the said 1st day of December, a number of times given such assurance by said person in charge of said work; that on the

said first day of December, while plaintiff was engaged in shoveling inside said tunnel, at a point about 170 feet inward thereof, and while in full reliance on the said assurances of said person so in charge of said work, to the effect that there was no danger in or about the same, and knowing that said assurances had the approbation of these defendants, and while this plaintiff was so engaged in work, unsuspecting danger because of said assurances, a great mass of earth fell from the roof of said tunnel upon plaintiff, crushed him to the ground, and broke his right arm in two places, and greatly bruised his left arm, so that for the space of two weeks thereafter plaintiff required the services of a personal attendant to feed him and attend to all his personal wants; and because of the falling upon plaintiff of said earth he was caused great bodily suffering, and the shock that resulted from such injury greatly impaired plaintiff's nervous system, and rendered him sick, so that at this date he is unable to perform work of any character, and such incapacity will probably continue for the space of two months hence, that said injuries so received threaten to permanently impair the health of plaintiff; that said earth was caused to fall upon plaintiff, as aforesaid, by the neglect and failure of defendants to exercise ordinary care to provide a reasonably safe place for plaintiff to work in, to do which was a positive duty due from defendants, personally, to plaintiff, and because said defendants, in violation of their said duty to furnish plaintiff with a safe place in which to work, negligently and carelessly failed to properly, or at all, brace or timber said tunnel at the point where plaintiff was working under the direction of defendants, when injured, as aforesaid, or to take proper precautions to prevent the falling of said earth from the roof of said tunnel, as aforesaid, and, further, because the dangerous character of the place at which plaintiff was employed when so injured, and of the work at said place, was such as defendants, had they exercised ordinary care and diligence, should have known and apprehended, but whereof this plaintiff was unaware by reason of his inexperience, and by reason of his reliance upon the assurance, given to plaintiff as aforesaid, that no danger need be apprehended in or about said work; that by reason of the injuries sustained by the plaintiff by the carelessness and negligence of the defendants, as aforesaid, plaintiff has been unable to work since said 1st day of December, 1899, and thereby has lost 53 days' work to this date, the value whereof per day is $1.75, and the total value whereof is $92.75, to plaintiff's damage in said sum of $92.75; and that by reason of such injuries received as aforesaid, plaintiff has been further damaged in the sum of $5,000.00."

The answer of the defendants denies these allegations of the complaint, and alleges, in substance, affirmatively, that plaintiff was fully aware and informed of all the dangers of his employment; that defendants exercised every possible precaution for the protection of their employés in said tunnel; that defendants were not guilty of negligence in any respect whatsoever, but that plaintiff's injuries resulted solely and proximately from his own negligence; and, as a further defense, that plaintiff's injuries were the result of the acts of his fellow servants.

The objections made to the various rulings of the court are quite numerous. It will be unnecessary to specifically notice all of them. Several of the objections present substantially the same question, although made at different times and in different ways.

1. It is claimed that the court erred in admitting evidence, at various times, as to the strength and size of the timbers used in the tunnel, in that it does not appear from the evidence that the accident to plaintiff was caused by defective timbering. While it may be the better practice to first show how the accident occurred, it certainly was not error to overrule the objections upon the promise of counsel for Bender that he would show that the injury resulted

from the defective timbering, which was afterwards done. The order in which testimony should be introduced is largely within the discretion of the court. The rule is well settled that an error in admitting evidence without the requisite preliminary, or connecting, proof is cured by the subsequent introduction of such proof; and this is the rule in California, where the case was tried. People v. Shainwold, 51 Cal. 469; Robinson v. Bank, 81 Cal. 106, 111, 22 Pac. 478. In the light of the issues raised by the pleadings, evidence upon this point was admissible for the purpose of showing negligence upon the part of the plaintiffs in error. Testimony was thereafter given which certainly tended to show that the place where Bender was injured was unsafe, and that the timbering about that point was defective. Touching these questions Mr. Pugh, who had been engaged for about 10 years in tunnel work, after describing the usual methods of timbering used, and of his familiarity with the tunnel, and of the timbering therein, testified as follows:

"I was foreman of the excavating. I have complained many times to Mr. Swensen of the insufficiency of the timbering; that is, as to the distance apart it was placed. I told him a couple of times that the timbering was not sufficient to protect the ground and the men. He said he thought it was all right. I complained to him maybe a dozen times. The morning of the accident I * * * met him at the entrance of the tunnel, and told him that the place was in a dangerous condition, and that we ought to put, what we call generally, a set of timbers three or four feet apart. And he said to me, 'Pugh, I can't stand it; they must be six feet apart;' and I told him, 'If that is the case, Mr. Swensen, that will put the men in danger; and, another thing, they can't do their work; they are afraid to work.' He then asked me, 'Is there anything we can do there?' I said, 'Well, there is only one thing,—to put the timbers there to protect the men.' And he suggested something this way, 'Can we put some planks there?' (meaning two by twelves) 'to hide the danger from the men, so that they won't be afraid to work?' And I said, 'You can do that if you will take the responsibility of it.' * * * I had the men to work that morning just clearing out the timbers. The timbers and the dirt were in the way. I did not put the men to work where the danger was until Mr. Swensen came there. I wanted to inform him about the place and conditions before I put the men to work. After he came there he told me to put the men to work, and to get the dirt out. * * * At about half past ten or eleven Mr. Swensen came in. We were talking over some things, and Mr. Bender, he was looking around and looking up that way, and I walked up to him and said, 'Mr. Bender, it seems to me you are afraid to work in here. If you are afraid, the best thing you can do is to get out of here, because you are liable to catch a good hurt here.' Mr. Swensen passed me and went into the men, and said, 'Go ahead about your work. It is absolutely safe to work here. There is no danger at all. Go ahead with your work.' I was present at the time of the accident. * * * At the place where the accident occurred timbers two inches by twelve inches, about four or five or six, were put forward about six or seven feet, to hide the danger from the men."

Mr. Botwright, who was the timber man at the tunnel, testified as follows:

"I was doing timber work in the east end of the tunnel. I was working there on the first day of December, 1899. I was acquainted with Mr. Bender, the plaintiff in this case, and I recollect the occurrence of an accident to him in the tunnel, between one and two o'clock on the first day of December, 1899. In the morning of that day Mr. Swensen came to me outside, and we talked over about the place where the accident occurred later that day, and I asked him what I had better do; that I did not think that it was really

safe for the men to work in there. He said, 'Oh, well, go to work and put up some planks to hide the danger from the men so they will go ahead and work.' I know the spot where Bender was hurt. He was hurt right where we were working. I told Mr. Swensen that I thought we ought to timber it as fast as we could get to it to avoid danger. Pursuant to his direction to put the timbering in there, I did just exactly what he told me to do. * * * The danger of that particular spot consisted in this: We had had a cave-in, and after this cave-in came, Mr. Pugh, the foreman, and myself had started to catch up this place on the south side. We had put up one set of timbers, and wanted to get up another set, so we could make it safe for these men to work. In order to do that way, we had to work a few men to clean this dirt away. But we went to work and put up one set. * * * The next morning we were getting ready to put up another set. I was outside pretty near all morning cutting timbers, and I had a man working with me inside. As near as I can remember now, this place was scaly in the top where it had caved down, and here the accident happened. It was about eight feet from these plants [planks] to the roof of the tunnel, where it had caved in, and it was naturally dropping there all the time and falling. I and the foreman went to work ourselves in order to get this thing stopped from caving. We didn't work anybody at helping to do this timbering but ourselves and one man. Mr. Bender and three other men were shoveling in the bottom of the tunnel,—shoveling out the cave-in. I apprehended that the place from which the cave came was dangerous to those beneath, and I told Mr. Swensen it was. Mr. Swensen told me to put those planks in to hide the danger from the men, so they would not see it. I put them in * * * exactly as he directed. I got all my instructions in placing and constructing the timbering from Mr. Swensen,—nobody else. I condemned that place at which we were working, and told Mr. Swensen that I did not think his method of timbering was proper. He said it was the best he could do. He said he could not buy any more timbers; that they were costing him too much already."

The testimony of these witnesses as to the defective timbering was corroborated by other witnesses.

The court did not err in refusing to strike out the words in the foregoing testimony "to hide the danger from the men." This expression on the part of Swensen, as testified to by the witnesses, if true, tended to show a wanton disregard on the part of the plaintiffs in error to keep the tunnel safe. It tended to show that they knew the place was dangerous, and that they attempted to deceive the workmen and hide from them the knowledge which plaintiffs in error possessed as to its dangerous condition. Swensen denied having made any such remark, and denied having notified Bender that the place was perfectly safe, or directed him to go to work, and declared that Pugh was the person that gave such information and direction. He testified, among other things, that:

"The general supervision of the entire work in the tunnel was, of course, in my hands. * * * I have had no experience in placing timbers in a tunnel. I made suggestions as to the placing of timbers in this tunnel, but Mr. Pugh directed that work entirely. * * * During the morning of the accident I got to the tunnel about half-past seven. Mr. Bender was shoveling dirt into the car at the place where he was hurt. Mr. Pugh put him to work there, and I was with Mr. Pugh. The planking that was overhead where Mr. Bender was working was placed there by Mr. Pugh's directions."

Notwithstanding the statement that he "had no experience in placing timbers in a tunnel," he further said:

"I had knowledge as to the sufficiency of the timbers and the structure at the place, and on the occasion, of the accident, and they were amply sufficient to carry the load that was imposed upon them."

The entire testimony was of such a character as to eliminate from the case the question as to the injury of the defendant in error having been received by the acts of his fellow servants; as it clearly shows that the plaintiffs in error were alone responsible, and tended to show that their action in the premises was such as to induce Bender to believe that there was no danger. It is true that the putting in the planks "to hide the danger from the men" did not make the place safe, but Bender, in the light of all the facts, had reason to believe that it did; and this, with the assurances given him that the place was safe, was well calculated to allay the fears he had previously exhibited as to the danger he was in. The only reasonable inference that could be drawn by the jury from the testimony was that Bender, after the planks were put in, believed the statements as to the place being safe were true, and that he acted under that belief.

2. Dr. Schmidt was called as a witness, and testified as follows:

"I am a physician by occupation, and am engaged in active practice. I have been so practicing since 1882. I am acquainted with Mr. Bender, the plaintiff, and I knew him prior to December 1st, the time of his injury. The condition of his health prior to that time was good. From my education, training, and experience as a physician, I am familiar with nervous ailments and their causes. I have rendered medical services to the family of Mr. Bender before the accident. I have been his family physician."

It is assigned as error that the court erred in allowing a hypothetical question propounded to Dr. Schmidt to be answered, as follows:

"Q. Now, doctor, suppose a man before a certain accident has been enjoying good health, freedom from any indications of nervous disorder, and that thereafter, about December 1, 1899, he should meet with an accident of this character; that a great quantity of boards and earth should fall from a distance of seven, eight, or ten feet upon his breast and stomach and on his arms and shoulders, breaking the right arm in two places, and stunning him so that he remained in that condition for a period of three hours; that thereafter he remained in bed for about three weeks; was unable to resume his ordinary avocation, go to work for a period of eight months; that his arm is still sore; he is unable to close his hand; that before that time he treated his family with kindness,—ordinary kindness, at least; no indication of nervousness about his demeanor towards his family; since that time he is very nervous and cross; punishes his children without provocation, exhibits great irritation, so as to lead him to punish them when they talk about the room; that he has fainting spells occasionally, so that he reels about and grabs at articles that may be in reach; that he is so irritable and cross towards his wife and daughter that he has ordered both of them to leave home, without provocation; and that he had had no other accident or ailment at or about that time. What would you attribute the result of this nervousness, and this nervous condition, exhibited by him that I have referred to? A. I would attribute it to the accident."

The objection to this question was that, "It was based upon facts not in evidence, and upon a hypothetical nervous condition subsequent to the accident of which there was no evidence." This objection was properly overruled. There was testimony offered upon every fact specified in the question. It is always proper to permit such questions to be answered, and it is not, as a general rule, necessary that the questions should embrace or cover all the facts of the case. The authorities upon this point will be found in Railroad Co. v. Roller, 41 C. C. A. 22, 100 Fed. 738, 754, 49 L. R. A. 77.

3. With reference to the alleged error of the court in refusing to grant a nonsuit but little need be said. It is true that an employé assumes all the ordinary risks incident to his employment; but it was the duty of the plaintiffs in error to use reasonable care and diligence to keep the tunnel in a reasonably safe condition, so that their servant might not be exposed to unnecessary, unreasonable, or extraordinary risks. The servant only undertakes the risks of the employment so far as they spring from defects incident to the service. He does not take the risk of the negligence of the master. Railroad Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766, and authorities there cited. For a failure to exercise this duty which results in an injury to the employé the employer is liable. Railroad Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 40 L. Ed. 994; Railroad Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Same v. Archibald, 170 U. S. 665, 669, 18 Sup. Ct. 777, 42 L. Ed. 1188; Railroad Co. v. Jarvi, 3 C. C. A. 433, 53 Fed. 65, 68; Hanley v. Construction Co., 127 Cal. 232, 239, 59 Pac. 577, 47 L. R. A. 597; Bowen v. Railway Co., 95 Mo. 268, 273, 8 S. W. 230. This duty and liability is personal to the master, and cannot, in any case of this character, be so delegated by the master as to relieve him of his liability. Railroad Co. v. Herbert, 116 U. S. 642, 648, 6 Sup. Ct. 590, 29 L. Ed. 755. Applying these principles of law to the facts of this case, it is manifest that the court did not error in refusing to instruct the jury to return a verdict for the plaintiffs in error. The authorities cited by plaintiffs in error contain correct principles of law as applied to the facts of each case; but an examination of them shows that the servant either voluntarily entered a service known to him to be dangerous, or which afterward became dangerous to him, and with full knowledge thereof he continued work without notifying his employer of the danger; or where the servant knows of the hazardous character of the work and is injured by an accident which could not have been foreseen by his employer; or where the service in which the servant is engaged includes the duty on his part of preparing the timbers or appliances used in the construction of a tunnel or in the erection of buildings, etc. This case does not present any such questions. The distinction between the case at bar and the cases relied upon by plaintiffs in error are clearly pointed out in Hanley v. Construction Co., supra. In Kelley v. Dyeing Co., 12 R. I. 112, 116, 34 Am. Rep. 615, cited by counsel, the court, after holding that plaintiff had assumed the risk under the first point above stated, said:

"If, when the danger occurred, the plaintiff had notified the defendant of it, and had been induced to remain in his position by assurances that it should be remedied, or, as some of the cases hold, by a reasonable expectation that it would be remedied, then it would not necessarily be presumed from his knowledge of the danger that he had assumed the risk."

Upon the question of the assumption of risk and alleged contributory negligence upon the part of Bender, it is only necessary to add that the charge of the court upon these points, to which no specific objections were made, was as favorable to the plaintiffs in error as the law and testimony would warrant.

4. There were but two exceptions taken to the charge of the court. After stating that it was essential to a recovery that the plaintiff must prove "that the defective timbering was due to the negligence of the defendants, or, in other words, that its unsafe and dangerous condition was, or, by the exercise of ordinary care, could have been, known to the defendants in time to prevent the injuries complained of," the court said:

"On this branch of the case the court instructs you, further, that an employer does not guaranty the absolute safety of the place where the employé works; but it is the duty of the employer to exercise ordinary and reasonable care in providing a safe place for the employé to work in, and this duty cannot be delegated to a servant, so as to exempt the employer from liability for injuries caused to another servant by its omission. The servant does not undertake to incur the risks arising from negligence in providing or maintaining a suitable and safe place for his work. His contract implies that, in regard to this matter, his employer will exercise due care in making adequate provision that no danger shall ensue to him. It was the duty, therefore, of the defendants, resulting from their employment of the plaintiff as a laborer, to exercise reasonable care in properly timbering the tunnel."

This portion of the charge was objected to on the ground that it does not take into consideration the exception to the general rule therein stated, that the rule does not apply where the preparation of the place in which the employé is to work is a part of the very work which he and his fellow servants are employed to perform, and for the further reason that the rule of law set forth in the said instruction does not apply where the employé is employed to repair a defect itself obviously, and from the very nature of the case, dangerous to all persons employed in such work. It is a sufficient answer to these objections to say, in addition to what has already been said upon this subject, that the facts testified to did not bring the case within any of the exceptions to the general rule stated in the instruction.

The other portion of the charge complained of reads as follows:

"The damages, if any, in this case cannot be exemplary, that is, given by way of example or punishment, but must be limited to actual or compensatory damages; and in estimating their amount *you should take into consideration the monetary loss, if any, sustained by plaintiff through inability to work during the periods of his incapacity and probable incapacity alleged in the complaint,* also the condition of his health, and physical ability to labor, before the accident complained of, as compared with the present condition thereof, and how far the injury is probably permanent in its character and results, as well as the physical and mental suffering he has suffered, if any, by reason of the injury; and you will allow such damages as in your opinion will fairly and justly compensate plaintiff for all the injury and loss and suffering, physical and mental, sustained by him, as the direct and proximate results of the accident, not to exceed the amount demanded in the complaint."

Exceptions were taken to the use of the words we have italicized. We are of opinion that this portion of the charge was correct. The authorities in support thereof are cited in Railroad Co. v. Roller, 41 C. C. A. 22, 100 Fed. 738, 750, 49 L. R. A. 77. In that case the court, after stating that the damages, if any, which could be recovered, are compensatory damages,—such damages as would naturally

flow directly from the injury, if any, occasioned to Mrs. Roller by said collision,—said:

"These compensatory damages embrace all damages for bodily and mental pain and suffering which have resulted to said Katherine A. Roller from said injuries, and if said injuries are permanent, or she has not recovered from them, such damages, also, as you may find from the evidence it is fair to believe she will suffer from said injury in the future."

This court said, "This part of the charge was unquestionably correct." The use of the word "probable" in this instruction, which is criticised by counsel, could only be construed to have the same meaning as "it is fair to believe * * * the plaintiff will suffer * * * in the future," and does not call for any conjecture or guess upon the part of the jury, and it is apparent that the jury could not have been misled thereby. There was some evidence—perhaps slight—sufficient to authorize the court to give the instruction.

Bender himself testified:

"Before the occurrence of this accident I was very healthy, and my arms were in good condition. My right arm was broken in two places. It now pains me continuously, and is stiff. I cannot use it well. I cannot close my whole hand. * * * I am working now, and the effect of this work upon my hand is that the hand always hurts me at nighttime; and it hurts me also during the day when I am using it."

5. The entire charge of the court to the jury was substantially correct in all particulars, and was directly applicable to the issues raised by the pleadings and the testimony given at the trial, and embraced all the points upon which it was necessary to instruct the jury. Some of the instructions asked for by the plaintiffs in error which were refused contained correct principles of law, others were misleading, and some of them were clearly erroneous. As to these instructions, it is only necessary to say that the points involved therein were all embodied in the charge of the court in a clear, concise, and correct manner. It was unnecessary to repeat them. The general rule with respect to this matter is well settled that instructions on points which have been sufficiently covered by other instructions may properly be refused, although they are correctly drawn and applicable to the evidence. This is so, whether the instructions requested are covered by the general charge, or whether the mode of expression is the same or different. The duty of the court is fully discharged if the instructions embrace all the points of the law arising in the case, in the court's own language. It is the duty of the court to simplify its directions to the jury and make every effort to render them as free from complexity as possible. The reason for this rule is obvious. Repetition tends to incumber the record, and to confuse and embarrass the minds of the jury, and it is also liable to give undue prominence to the proposition repeated. 11 Enc. Pl. & Prac. 288.

The judgment of the circuit court is affirmed, with costs.