## NAGLE v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

### No. 1,923.

**1. TERRITORIES (§ 18*)—POLITICAL STATUS OF ALASKA—TERRITORIAL ORGANIZATION—APPLICATION TO ALASKA OF ACTS OF CONGRESS.**

Since the passage of Act May 17, 1884. c. 53, 23 Stat. 24, providing a civil government for Alaska, that territory has been an organized territory of the United States, and by virtue of Rev. St. § 1891. which provides that "the Constitution and all the laws of the United States which are not locally inapplicable, shall have the same force and effect within all the organized territories and in every territory hereafter organized as elsewhere within the United States," all laws of Congress of general application not locally inapplicable are in effect in Alaska.

[Ed. Note.—For other cases, see Territories, Cent. Dig. §§ 14, 15; Dec. Dig. § 18.*]

**2. INDIANS (§ 34*)—SELLING LIQUOR TO INDIANS—STATUS OF ALASKA INDIANS—CITIZENSHIP.**

The provision of Act Feb. 8, 1887, c. 119, § 6, 24 Stat. 390, relating to allotments of lands to Indians in severalty, that "every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States and is entitled to all the rights, privileges and immunities of such citizen," is in effect in Alaska, and operates to make Indians therein, who are descendants of the aboriginal tribes, born since the annexation of Alaska, but who have voluntarily taken up their residence separate and apart from any tribe and adopted the habits of civilization, citizens of the United States, and the sale of liquor to such an Indian does not constitute an offense under Alaska Code Cr. Proc. § 142, as amended by Act Feb. 6, 1909, c. 80, § 9, 35 Stat. 603. making it an offense to sell liquor to an "Indian," which term is defined to include the aboriginal races inhabiting Alaska when annexed to the United States, and their descendants of the whole or half blood "who have not become citizens of the United States."

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 34.*

Admission of Indians to citizenship, see note to United States v. Allen, 103 C. C. A. 13.]

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

Thomas Nagle was convicted of a criminal offense, and brings error. Reversed.

Jno. W. Arctander, for plaintiff in error.
John Rustgard, U. S. Atty.

Before MORROW, · Circuit Judge, and HANFORD and WOLVERTON, District Judges.

WOLVERTON, District Judge. This is a writ of error from a judgment rendered in the District Court of Alaska, Division No. 1, against plaintiff in error, upon a charge of selling liquor to an Indian, namely, one Billie Hooker, contrary to the provision of section 142 of the Alaska Criminal Code of Procedure, as amended by Act Cong. Feb. 6, 1909, c. 80, 35 Stat. 600. The trial was had October

26, 1910. Billie Hooker, being called as a witness, gave evidence tending to show that he was of the age of 25 years, being born at Wrangell, Alaska; that his parents were Indians of the Thlingit Tribe; that they had, for as long as he could remember, lived separate and away from the tribe; that he of his own accord had always lived separate and apart from the tribe, and briefly, in effect, that he had adopted the habits of civilized life.

The court was requested to instruct, in effect, that if Hooker was a descendant of one of the aboriginal tribes inhabiting Alaska when it was annexed to the United States, was born subsequent to the date of such annexation, and had prior to the date of the alleged sale of whisky to him voluntarily taken up his residence separate and apart from any tribe of Indians, and, furthermore, had adopted the habits of civilized life, then he was a citizen of the United States, to whom it was no offense under the specific statute to sell intoxicants. The request was denied, and the ruling of the court in that regard is assigned as error. Other instructions were asked of a like nature, and refused, but this one is sufficiently illustrative, rendering it unnecessary to make further allusion to them.

The principal question presented is whether Hooker had become, or was at the time of the trial, a citizen of the United States, or, to be more explicit, whether the question under the evidence was one material to the controversy to have been submitted to the jury.

The contention of counsel for plaintiff in error is that, under the treaty with Russia for the acquisition of Alaska Territory by the United States, the federal Constitution, and the laws of Congress, an Indian, being a descendant of one of the aboriginal races inhabiting Alaska, who has severed his tribal relations by voluntarily taking up his residence and living separate and apart from any tribe, and adopting the habits of civilized life, is a citizen of the United States, and that it is no offense under the statutes invoked to sell intoxicants to such a person. Section 142 of the Criminal Code of Alaska, supra, defines the term Indian "to include the aboriginal races inhabiting Alaska when annexed to the United States, and their descendants of the whole or half blood, who have not become citizens of the United States."

The only clause of the Alaskan treaty with Russia (Act March 30, 1867, 15 Stat. 539) that bears upon the present controversy is article 3 thereof. By this article inhabitants of the ceded territory desiring to remain therein are guaranteed the enjoyment of the rights, advantages, and immunities of citizens of the United States. The uncivilized native tribes are, however, excluded from this guaranty. As to these, it is stipulated that they "will be subject to such laws and regulations as the United States may from time to time adopt in regard to aboriginal tribes in that country." There can be no doubt that this stipulation relates to the Indian tribes in Alaska, and manifestly the treaty was designed to insure them like treatment, under the laws and regulations of Congress, as should be accorded Indian tribes in the United States. Whether the provision is effective to extend even the general laws and regulations of the United States relative to In-

dians and Indian tribes to those Indians and Indian tribes in Alaska is unnecessary to decide, as the question is satisfactorily concluded by other considerations.

[1] By section 3, art. 4, Const., Congress is given power and authority "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." In pursuance of this authority, Congress has enacted that:

"The Constitution and all laws of the United States which are not locally inapplicable shall have the same force and effect within all the organized Territories, and in every Territory hereafter organized as elsewhere within the United States." Section 1891, R. S.

Now, it is insisted that the force and effect of this enactment is to extend Act Feb. 8, 1887, c. 119, 24 Stat. 388, relative to allotments of lands in severalty to Indians on the various reservations to the Indians and Indian tribes of Alaska. In this relation, it is urged that the provision contained in section 6 thereof, as follows:

"Every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States, without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property"

—operates to make Indians in Alaska who observe the behests of the provisions citizens, as well as Indians who reside elsewhere in the United States.

Whether this be so we think must depend upon whether the laws of Congress of general application have been extended to or are effective upon any constitutional or legal principle within the territorial confines of Alaska. We are of the view that the question must be answered in the affirmative, whether we apply the principle that the applicability of the Constitution to newly acquired territory by treaty depends upon whether the territory has been incorporated into the United States, so cogently expounded by Chief Justice White in the Insular Cases (Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088), and since, or that enunciated by the court through Mr. Justice Brown that the Constitution can apply only to such possessions when so extended by appropriate declaration of Congress. The essential difference between the two principles is that under the former ceded territory may come under the sovereignty of the United States and be subject to its control as a dependency or possession only, in which case Congress may legislate concerning such possession subject only to the provisions of the Constitution applicable to territory occupying that relation. When, however, such ceded territory has become incorporated into the United States, which incorporation may be evidenced by the declarations of the treaty and the subsequent acts of Congress in legislating concerning the newly acquired possession, Congress in exercising its powers with reference to it is subject to all the limitations of the Constitution applicable to that department of govern-

ment. Under the latter principle, until Congress has extended the Constitution to the newly acquired possession by appropriate declaration or legislation, it has power to deal with, and with reference to such possession, under its authority to regulate, territories, and this regardless of the further limitations of the Constitution, except so far as it concerns the natural rights of the inhabitants to life, liberty, and property. Under either principle, it must necessarily follow that wherever the Constitution goes, whether by the doctrine of incorporation or through Congressional declaration, the laws of Congress adopted in pursuance of the Constitution intended for general application, and not locally inapplicable, will go and become operative also. Thus an act of Congress made applicable generally among the states will become alike applicable within the confines of any new state that may be admitted into the Union. So an act designed to apply generally to the territories of the United States must needs apply to any new territory that may be formed or incorporated into the United States. And it may be that the law will be of such general scope as to apply within both states and territories.

In view of the doctrine of incorporation of newly acquired territory, Alaska has heretofore become incorporated into the United States. The case of Rassmussen v. United States, 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862, is ample authority for the proposition. It is so held explicitly.

On the other hand, it would seem that the Constitution has been extended to Alaska by express declaration of Congress. Section 1891, Rev. St. supra. The only question involved in this aspect is whether Alaska is an organized territory. In Steamer Coquitlam v. United States, 163 U. S. 346, 352, 16 Sup. Ct. 1117, 1119, 41 L. Ed. 184, it was expressly said that:

"Alaska is one of the territories of the United States. It was so designated in that order (order of the Supreme Court assigning Alaska to the Ninth judicial circuit) and has always been so regarded. And the court established by the act of 1884 is the court of last resort within the limits of that territory."

So it was said by Mr. Justice Brewer in Binns v. United States, 194 U. S. 486, 491, 24 Sup. Ct. 816, 817 (48 L. Ed. 1087), after alluding to the above-cited case:

"Nor can it be doubted that it is an organized territory, for the act of May 17, 1884 (23 Stat. 24), entitled, 'An act providing a civil government for Alaska,' provided: 'That the territory ceded to the United States by Russia by the treaty of March thirtieth, eighteen hundred and sixty-seven, and known as Alaska, shall constitute a civil and judicial district, the government of which shall be organized and administered as hereinafter provided.' "

And, again, Mr. Justice Brown says, in his concurring opinion in Rassmussen v. United States, supra:

"Had the opinion treated the territory as organized under this act (act of 1884 providing a civil government for Alaska [23 Stat. 24]), I should not have dissented from this view."

Then continues the distinguished jurist:

"Congress did undoubtedly provide a permanent civil government for Alaska by the act of June 6, 1900, 31 Stat. 321, but it evidently did not

regard the Constitution as extended to it by any previous act, since it provided in section 171 for trials of misdemeanors by a jury of six."

It scarcely needs further comment respecting the proposition that Alaska has been duly constituted an organized territory within the meaning of section 1891, Rev. St. The act of May 17, 1884, was entitled "An act providing a civil government for Alaska." It declared that the territory known as Alaska "shall constitute a civil and judicial district, the government of which shall be organized and administered as hereinafter provided." Section 2 provides for the appointment of a governor, and prescribes his duties. Section 3 establishes a district court, and defines its jurisdiction. Section 7 prescribes that the laws of Oregon, where applicable and not in conflict with the act or the laws of the United States, shall be in force in said territory. Section 8 declares the district of Alaska to be a land district. Section 11 requires the Attorney General to compile in pamphlet form so much of the general laws of the United States as is applicable to the duties of the officers provided for. Section 12 provides:

"That the Secretary of the Interior shall select two of the officers to be appointed under this act, who, together with the Governor, shall constitute a commission to examine into and report upon the condition of the Indians residing in said territory, what lands, if any, should be reserved for their use, what provision shall be made for their education, what rights by occupation of settlers should be recognized, and all other facts that may be necessary to enable Congress to determine what limitations or conditions should be imposed when the land laws of the United States shall be extended to said district."

And section 14:

"That the provisions of chapter three, title twenty-three, of the Revised Statutes of the United States, relating to the unorganized Territory of Alaska, shall remain in full force, except as herein specially otherwise provided."

This act was superseded by the act of June 6, 1900 (31 Stat. 321), which provides for a complete political, civil, and criminal Code for the government of Alaska, omitting all restrictions as contained in section 14 of the old act. Could any more adequate and complete organization of the Territory of Alaska be had? True, no legislative body is provided for, but Congress constitutes that body, if such a one is requisite to give Alaska the status of an organized territory. Nor do we place stress upon the fact that the term "district" is employed in many acts and measures dealing with Alaska, instead of the word "territory." The territory is organized notwithstanding, whether it be called a district or a territory.

[2] This brings us to the discussion of the applicability of the act of February 8, 1887 (24 Stat. 388), relating to allotments of lands to Indians. The provisions of section 6, which have relation to this inquiry, have been quoted above. Two classes of Indians born within the territorial limits of the United States are declared to be citizens thereof, namely, Indians who have received allotments under any act or treaty, and Indians who have severed their tribal relations by taking up their residence separate and apart from any tribe, and have

adopted the habits of civilization.. The act is so specific and far-reaching in its scope that it must be held to be general in its purpose and intendment, and to apply to every Indian within the territorial limits of the United States. Being such, section 1891, R. S., makes it applicable in Alaska; it being, as we have seen, organized territory. This is only in pursuance of the long-continued policy of the general government to civilize and citizenize the Indians whenever they will assent to it, and show themselves capable of taking up the pursuits of civilized life.

It is argued that, because the government has never treated with the Indian tribes in Alaska, therefore it was not the intendment that general laws respecting Indians should extend to the territory of Alaska. It should be borne in mind, however, that it has long since been declared to be the policy of Congress not to treat further with the Indians as tribes. Act March 3, 1871, c. 120, 16 Stat. 544, 566. Ever since the passage of that act, Congress has governed the Indians by law, and not by treaty, and the policy affords cogent reason why general laws should apply to individual Indians in Alaska as well as elsewhere.

These considerations lead to the conclusion that, under the evidence adduced, the question should have been left to the jury to determine whether Hooker had become a citizen of the United States, and, if found to be such, then the acquittal of the accused should follow.

It is urged that the court should have found under the evidence as a matter of law that Hooker was a citizen. The question of fact, however, was not conceded, and the credibility of Hooker stood in the balance, so that it was a matter for the jury to determine as to the effect of the evidence, and the court would not have been warranted in taking the case from them.

The judgment of the District Court will be reversed, and a new trial awarded.