### JOHNSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 14, 1919.)

No. 3327.

1. PROSTITUTION ⬥1—"WILLFULLY" PROPERLY DEFINED IN INSTRUCTION.

In a prosecution under Laws Alaska 1913, c. 57, in which defendant was charged with "willfully permitting" his wife to practice prostitution, an instruction that the word "willfully," as used in the statute, means "intentionally or knowingly," *held* correct (citing Words and Phrases, Willful).

2. PROSTITUTION ⬥5—INSTRUCTION AS TO "WILLFULLY" PROPERLY REFUSED.

In a prosecution under a statute making it an offense for a man to "willfully permit" his wife to practice prostitution, a requested instruction that the act must have been done affirmatively and corruptly *held* properly refused.

3. COSTS ⬥292—CRIMINAL PROSECUTIONS IN ALASKA—POWER TO AWARD COSTS.

In a criminal prosecution under a statute of Alaska for an offense not capital, a judgment of conviction may properly include costs of prosecution, in view of Rev. St. § 974 (Comp. St. § 1615), allowing imposition of costs on defendant, and Act Aug. 24, 1912, § 3 (Comp. St. § 3530), making federal Constitution and laws applicable to Alaska.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska.

Criminal prosecution by the United States against W. H. Johnson. Judgment of conviction, and defendant brings error. Affirmed.

Wm. H. Rager, of Anchorage, Alaska, L. V. Ray, of Seward, Alaska, and E. E. Ritchie, of Valdez, Alaska, for plaintiff in error.

William A. Munly, U. S. Atty., of Valdez, Alaska, and J. C. Murphy, Asst. U. S. Atty., of Anchorage, Alaska.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The offense of which the plaintiff in error was convicted, and for which he was sentenced in the court below to imprisonment for ten months in jail and to pay the cost of prosecution, taxed at $417.67, was that of willfully permitting his wife to practice prostitution—the statute under which the prosecution was had reading as follows:

"That any male person who may be found loitering around houses of ill fame, or who solicits, incites, induces, encourages, persuades, or prevails upon any other male person to patronize any house of ill fame or any woman commonly reputed to be a prostitute; or who shall be an inmate of any house of ill fame, or who is commonly known to consort with any prostitute, or who willfully permits a woman to whom he is married to practice prostitution, or who lives upon or receives the earnings of any prostitute, shall be deemed a

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pimp or macque, and upon conviction shall be imprisoned in a federal jail not less than thirty days nor more than one year." Session Laws of Alaska 1913, pp. 120, 121.

The points made in behalf of the plaintiff in error relate to instructions given and refused, 'to the inclusion of the costs of the prosecution in the judgment, and to the alleged insufficiency of the evidence to sustain the verdict of guilty returned by the jury.

As to the last-mentioned point, we think the evidence amply sufficient. It is enough to quote a little from the testimony of the witnesses Mossman, Cavanaugh, and Sturgis, who were deputy marshals at Anchorage, the place of the offense. Mossman testified:

"It came to my knowledge that the relationship of husband and wife existed between this defendant and this woman on the line. I called him into the office—sent out for him—on the 20th of November, 1917, and asked him a number of introductory questions, as to where he had been, and where he came from, and how long he had been here, etc., and finally asked him if he was a married man, and he told me he was. I then asked him where his wife was; and he said, 'She is on the line;' and I said, 'By what name does she go on the line?' and he said, 'Violet.' I said, 'Have you ever made any effort to get her off the line?' and he said, 'I told her that I thought we could get along without her working on the line;' and I said, 'You never made any real effort to get her off the line?' and he replied, 'No;' and I asked him as to their marriage license, where it was, and he told me it was either at home in his trunk or else she had it.

"Q. Where did you locate it? A. I sent Mr. Cavanaugh out with this defendant. They went to Mr. Johnson's room, and didn't find it in his trunk, and they then went to the house where the woman was on the row, and Mr. Cavanaugh returned with the license."

The witness further testified that at the time in question the defendant was engaged in running a taxicab for hire; his principal business being taking passengers from the town to the district where his wife was engaged in the practice of prostitution.

Cavanaugh having testified that he was present in the marshal's office when Mossman had the conversation with the defendant prior to his arrest, was questioned, and answered, among other things, as follows:

"Q. What was the gist of that conversation? A. Mr. Mossman asked him if he was married, and he said he was, and he asked him if his wife was down on the line working, and he said, 'Yes,' and asked him if he had done anything to take her off the line. I can't recall just exactly what he said, but I believe he said he told her to get off, or something to that effect, and she didn't do it. Q. Had he ever made any complaints to the marshal's office to get his wife off of this line? A. No, sir. Q. You may state whether or not you secured this marriage license? A. Yes. Q. Where did you get it? A. Why, she gave it to me. Q. Who told you where to get it? A. We asked him where the license was, and he said, if he didn't have it, why his wife had it; so I went to his room with him, and he went through his trunk and couldn't find it, and then he took me down to her house and she gave it to me. Q. Did it appear from his conversation at that time and the conversation you had with his wife that he and Mrs. Johnson were perfectly friendly? A. I never had any conversation with her; but the appearance was friendly when I went down to get the license, which she gave me. It was the first time I was ever in there, and I told her I wanted the license, and she wanted to know if she could have it back again, and I told her 'Yes.' "

And Sturgis testified that his particular duty was police work in "the restricted district," having charge thereof; that he knew the

wife of the defendant, who went by the name of Violet Johnson, and who was one of the prostitutes in the district; and that he had seen the defendant, whose business was that of driving a taxicab, go into the house belonging to Violet Johnson.

Mossman having testified to certain admissions made to him by the defendant, and the latter having acknowledged in his testimony that he told Mossman that he had never said anything to the officers of the law about getting his wife to change her mode of life, the defendant requested the court to instruct the jury that "too great weight ought not to be attached to evidence of what a party has been supposed to have said," because of possible misunderstanding or unintentional changing of the language, and thereby altering its effect. The court refused the requested instruction, but subsequently recalled the jury and gave this instruction:

"In view of the evidence in this case, you are instructed that the oral admissions of a party, in this case of the defendant Johnson, ought to be viewed by you with caution. This is a rule laid down in our statute, and given in proper cases, and I believe this to be a proper case, inasmuch as there were such admissions testified to. You will recall that one of the witnesses, I think Mr. Mossman, testified that the defendant Johnson had made certain admissions to him, oral statements, and I say to you again that this rule provides that you should view such admissions with caution. The reason of that is, if one makes admissions, another testifying to them may have misunderstood what the man said, or not get them exactly right, and things of that kind. That is the reason why you should look upon them with caution—that is the extent of the rule in that respect. You may retire."

It is needless to cite authorities to show that the error complained of was thus cured by the court.

[1] Complaint is also made that the court below refused to give this instruction:

"The court instructs the jury that the accusation against the defendant in this case is that the defendant on the 20th day of November, 1917, at Anchorage, Alaska, did willfully permit one Della Johnson to practice prostitution, the said Della Johnson being then and there married to said defendant; said accusation being brought under chapter 57 of the Session Laws of Alaska of 1913, p. 120, which makes it an offense for any male person who willfully permits a woman to whom he is married to practice prostitution; this being a penal statute, the court further instructs you that the word 'permit,' used in such statute, includes and means affirmative assent on the part of the defendant, and the word 'willfully,' as used in such penal statute, means not merely voluntarily, but implies that doing of the act with a bad purpose; that is to say, it means corruptly, and unless the prosecution has proved by the evidence beyond a reasonable doubt that the defendant acted with the corrupt purpose and a wicked and corrupt intent, and consented to his wife practicing prostitution as alleged in the complaint herein, then you will find the defendant not guilty."

Instead, the court told the jury that the word "willfully," as used in the statute upon which the charge was based, "means intentionally or knowingly," and further instructed them as follows:

"Intention, as I have advised you in other criminal cases, is something that no man can determine by looking into the mind of another; so a man is presumed to intend, he must be taken to intend, the natural, reasonable consequences of his acts. Now, in this case you are to determine whether he did this willfully or knowingly or intentionally by his conduct, as, for instance,

if he had left the country and not seen the woman again, you might naturally infer from that act, that course of conduct, that he had not willfully permitted it, and it is for you to determine from the evidence in this case, from the fact of his going down· and taking people down to this district, to where she was established at that time—it is for you to determine, from that course of conduct, whether he did knowingly, intentionally, and willfully permit her to practice that profession or business."

We are of the opinion that in both respects the action of the trial court was right.

[2] There are a number of reasons why the requested instruction was properly refused: First, because the word "permit," as used in this statute, does not mean "affirmative assent" or "consent," nor does the word "willfully," so used, mean "corruptly," nor was it necessary, to constitute the crime denounced by the statute, that the defendant should "have acted with the corrupt purpose and a wicked and corrupt intent and consent" to his wife practicing prostitution. In the first place, while the statute makes the despicable act of one who lives upon and receives the earnings of any prostitute a crime, it is a separate and distinct crime from that other most heinous offense of a husband willfully permitting his wife to practice prostitution, also expressly made a crime· by the same statute.

The statute does not use the word "corrupt," or "corruptly," in defining the crime under consideration, and we are of the opinion that neither of those words have any proper application to it, the use of which might and probably would have confused the minds of the jury, the very thing every trial court should always seek to avoid. Swenson v. Bender, 114 Fed. 1, 9, 51 C. C. A. 627. In the case of Hamburg-American Steam Packet Co. v. United States, 250 Fed. 747, 757, 163 C. C. A. 79, in speaking of the word "corrupt" in connection with the crime of conspiracy, the court said:

"Bouvier's Law Dictionary defines corruption as being something against law, and illustrates its application by the case of a contract for usurious interest wherein it was 'corruptly agreed,' etc. In State v. Lehman, 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670, it was held that an act is done corruptly when it is done with an intent to obtain an improper advantage inconsistent with official duty and the rights of others. And in State v. Johnson, 77 Ohio St. 461, 83 N. E. 702, 21 L. R. A. (N. S.) 905, the court held that one who addresses a communication to the judges of a court for the purpose of influencing their decision in a case pending therein, by disparaging one of the parties or the relator in a suit brought by the state, 'corruptly' endeavors to influence officers of the court in the discharge of their duties; and we conclude that an act such as charged in the indictments is done corruptly when it is done with a wrongful intent to acquire some improper advantage for one's self or for another, and which is inconsistent with the rights of others. As the offense charged is that of conspiring to defraud the United States, the parties necessarily must have conspired 'corruptly,' as well as 'unlawfully,' 'willfully,' and 'feloniously,' if they conspired at all to defraud."

The statute expressly provides that any man who willfully permits his wife to practice prostitution shall be deemed a pimp or macque, and upon conviction be imprisoned as therein specified, and we think the court below correctly defined the word "willfully" as meaning "knowingly and intentionally." It has been so defined in the very nu-

merous cases that have arisen under the Espionage Act, the decisions under which have been published by the government in the form of bulletins, and among which decisions are those of United States v. Rhuberg (Bulletin No. 107), decided by Judge Wolverton, and United States v. Marie Equi (Bulletin No. 172), decided by Judge Bean. See, also, Bouvier's Law Dictionary (8th Ed.) vol. 3, p. 3454; Words and Phrases, vol. 8, p. 7468 et seq.

Nor are we able to agree with counsel for the plaintiff in error that a husband who willfully permits his wife to practice prostitution must affirmatively permit or consent thereto in order to bring him within the terms of the statute defining the crime in question. "Permit" is an ordinary word of common and familiar use, and easily understood by every man and woman with sense enough to qualify as a juror. There was, therefore, no occasion for the court to undertake to define it, and certainly it was right in refusing to comply with the request to instruct the jury that it meant the affirmative assent on the part of the defendant.

[3] The remaining point on behalf of the plaintiff in error relates to the inclusion in the judgment against the defendant of the costs of the prosecution. The record shows that the bail bond executed by and on behalf of the defendant provided for the payment of such costs in the event of the affirmance of the judgment. Section 974 of the Revised Statutes (Comp. St. § 1615) is as follows:

"When judgment is rendered against the defendant in a prosecution for any fine or forfeiture incurred under a statute of the United States, he shall be subject to the payment of costs; and on every conviction for any other offense not capital, the court may, in its discretion, award that the defendant shall pay the costs of the prosecution."

By section 3 of the act of Congress of August 24, 1912 (37 Stats. 512, c. 387 [Comp. St. § 3530]), it is provided:

"That the Constitution of the United States, and all the laws thereof which are not locally inapplicable, shall have the same force and effect within the said territory [Alaska] as elsewhere in the United States."

And the amendatory act of August 29, 1914 (38 Stats. 710, c. 292 [Comp. St. 1918, § 3544a]), declares that:

"In the prosecuting of all crimes denounced by territorial laws the costs shall be paid the same as is now or may hereafter be provided by act of Congress providing for the prosecution of criminal offenses in said territory."

This court held in the case of Nagle v. United States, 191 Fed. 141, 111 C. C. A. 621, that all laws of Congress of general application, not locally ·inapplicable, are in effect in Alaska. That being so, we think the decisions in the cases of American Surety Co. v. United States, 239 Fed. 680, 152 C. C. A. 514, Fidelity & Deposit Co. of Maryland v. Expanded Metal Co., et al., 183 Fed. 568, 106 C. C. A. 114, and Hardesty v. United States, 184 Fed. 269, 106 C. C. A. 411, apply and are a sufficient answer to the point under consideration.

The judgment is affirmed.